# SUPERIOR COURT OF BALTIMORE CITY.

Filed June 13, 1914.

OLIVER P. ROBERTS
VS.
CLARENCE STUBBS, BUILDING INSPECTOR.

*Wm. A. Wheatley* for petitioner.
*Alexander Preston* for respondent.

BOND, J.—

I think we may take these principles to be established and to control the decision of the question of constitutionality.

The police power of the legislature clearly comprehends the imposition of restrictions upon the owner's use of his real estate in order to improve the fire risks, or the handling of fires, and otherwise to promote the general health and welfare. And the proper exercise of this power does not amount to a taking of property, such as will require the payment of compensation for the restriction, even though the restriction should deprive the owner of the use of some of his property for the general public benefit. A restriction with a merely esthetic object, as it is commonly described, is not within the police power, and can be imposed only in the exercise of the power of eminent domain; although in Maryland, as in some other states, we have advanced to the position that an incidental esthetic advantage may weigh in the balance in favor of a police regulation the reasonableness of which is questioned.

The judgment of the legislature is final on any question of the wisdom or justice of a restriction which is a mere police regulation. But there is imposed upon the court a duty to preserve the rights of a private owner against an exaction in the shape of a police regulation which is a taking of property and for which the Constitution requires that the owner be given compensation. And in determining whether the legislative enactment amounts to the exercise of the one power or the other, the court's inquiry cannot stop at any declaration of intent by the legislature, or be satisfied with the mere aspect of the legislation. Nor is its inquiry limited to study of the words used, as in construction or interpretation. The extrinsic circumstances, those of the property affected, and those of other property which may be compared, and other facts which may aid in showing the purpose and effect of the act must be considered. It would be difficult to exclude by a general rule any facts which might not be entitled to consideration in the decision of such a question. The fact that by the provisions of the particular enactment there may be some gain in the improvement of fire risks, or advance toward the accomplishment of some other appropriate object of police regulation, does not alone fix the character of the act. It is only a factor; although a most important one. All circumstances such as the isolation of one locality for regulation, the absence of similar treatment of the same condition elsewhere, are to be considered, too.

Welch vs. Swasey, 214 U. S. 91.

C. B. I. R. R. vs. Drainage Commissioners, 200 U. S. 593.

Quintini vs. Bay St. Louis, 64 Miss. 483.

Freund on Police Power, Secs. 180 and 181.

McGehe on Due Process of Law, Pages 62 and 309.

By the act which has stopped the Building Inspector from issuing the permit demanded by the petitioner, a small neighborhood in Baltimore City is isolated for a State regulation prohibiting the building of solid blocks of houses. The owner of any lot there is forbidden to build upon a considerable fraction of his land, in this instance about one-third, so that a space may be left between each house and its neighbor. This is not a restriction applicable in modern practice to all property being built up. On the contrary there is recognized need of close building in many convenient parts of the city, for close building produces less expensive dwellings. It is not a restriction for which there can be suggested any peculiar demand in this neighborhood, viewed from the standpoint of the State, or even of the city. The neighborhood seems distinguishable only by the fact that the covenants in private deeds, ordinarily relied upon to preserve landowners in near-by neighborhoods of the city the esthetic advantage of open building, have in this one been found deficient and inadequate. Wood vs. Stehrer, 119 Md. 143.

There is an obvious improvement in fire risks, perhaps in the risk of health, in having houses separated. But it is improvement to such a degree that it seems to me, measured by received practice and the public attitude toward building generally, as evidenced by the

absence of such a restriction anywhere else, it must be taken to be only an incident and not the object and purpose of the act. There are and always will be many conceivable improvements in fire risks and other risks; common practice, even according to the requirements of the most zealous, advanced legislative efforts, would never fail to leave many imaginable improvements still unattempted, and undesired. And when a single, isolated district, without any conceivable reference to peculiar local conditions, is made the subject of an extraordinary regulation, the court may be driven to see another object in the act, and may not be able to dismiss a private owner with the answer that having this aspect of a police regulation it must be accepted as such, and he cannot have his compensation for what might otherwise appear as a plain taking of his property. A restriction of the buildings in this neighborhood to one or two in number in each block would add greatly to security from spread of fires. Yet it would hardly be suggested that, in the absence of any peculiar need for it here, such a legislative restriction must be accepted as a police regulation and pass unquestioned merely because of this possibility of increased security. Desirable security is relative. The need of close building is met with elaborate provisions for the care of fires and health. Received practice with respect to the conditions presented must, to a large extent, at least, be taken as the measure of the purpose of the act; for thus the community has estimated the need of restrictions upon building, having in view all such facts as the dangers arising, and the facilities for extinguishing fires.

So upon these considerations I think the restriction cannot be regarded as a police regulation with the object of reducing fire risks, promoting the general health, or the like.

As has been said, I think it clear too that the aesthetic improvement of the neighborhood which is to be gained by the more open building. is not an object which might justify as a police regulation, a restriction of the use of the property without compensation. It would hardly be questioned nowadays that there is an aesthetic improvement in a neighborhood, rebounding to some extent, perhaps, to the benefit of the whole city, from open building, or rather from the cultivation of the unoccupied spaces which is likely to follow open building. But however the law may develop in the future it seems unquestionable that now a restriction upon the use of property merely for such a purpose can be accomplished only under the power of eminent domain, and not under the police power.

And I think the decision of the Court of Appeals in Cochran vs. Preston, 108 Md. 220, does not justify the conclusion that the possible improvement in fire risks and others, taken together with the aesthetic advantage described, should validate this act as constitutional exercise of legislative power. The restriction attempted to be imposed here would not tend to protect a city park or square, or any collections of books and art. The aesthetic improvement would enure almost entirely to other property owners in the same neighborhood, only remotely to the rest of the city.

My conclusion is that the Court cannot suppose any purpose in this act other than that of stamping upon this small neighborhood the character of aesthetic development determined upon by some private owners in it. That object can easily be considered highly desirable. And, on the other hand, it can be imagined that it might involve disregard of a need of cheaper houses at that place, and so do more harm than good. It seems to me quite clear that in any event, it is an object which cannot be accomplished by the exercise of the police power of the State, if, indeed, it is one appropriate to the power of eminent domain—a question which might stand debate.

The mandamus will be issued as prayed.