Hamilton, P. J.
This proceeding was instituted
by the plaintiff, Charles C. Meade, seeking an injunction restraining the defendants from interfering with the building of a garage on the property of the plaintiff in the city of Cincinnati, and a man *413 datory injunction to compel the revocation of the resolution under which the building permit secured from the building commissioner was revoked. A general prayer for equitable relief is contained in the petition.
It appears that in compliance with the building regulations of the city of Cincinnati, plaintiff applied for a permit to construct a garage on his premises at 3127 Fulton avenue, Cincinnati, and that pursuant to the application, on February 24, 1921, a temporary permit was issued to plaintiff to start work and excavate; and that later, on the 28th day of February, a permit was issued to erect a garage at the place above stated.
The plaintiff proceeded with the work and some excavating has been done. The location of the garage is in a residential district, where it appears that the houses of the several adjacent properties are located unformly several féet back from the street line and on a terrace several feet high. The garage is sought to be located by plaintiff on his property flush with the front street line, extending back into the terrace upon one corner of his lot, which places the garage several feet in front of the line of houses located as above stated.
The plaintiff alleges that it is impossible for him to construct the garage on any part of the premises, except in front of the dwellings aforesaid, that it is necessary for him to have a garage for the accommodation of his tenants, and that the revocation' of the permit, and the interference with the construction of the garage so located, is an invasion of his rights guaranteed by the Constitutions of the State of Ohio and of the United States of America.
*414 The answer, in substance, bases the right of revocation upon a resolution passed by the council of the city of Cincinnati, on the 8th day of March, '1921, which is as follows:
“Resolution. — Resolved, That the Commissioner of Buildings be directed to revoke and hold permit for the erection of a garage on Fulton Avenue, in front of No. 2135 and 2137 Fulton Avenue, until such time as the City Planning Commission shall act on same, and a public hearing shall be held by the property owners interested.”
Pursuant to this resolution the building commissioner revoked the permit.
The defendants further say that the erection and maintenance of a garage, or other structure of the type contemplated to be built at the location where plaintiff commenced to build the same, would be a great detriment to the neighborhood in which it is located, would depreciate the value of the property in the immediate vicinity thereof, and would be contrary to public welfare.
It appears that the building regulations as to character, materials, plans, etc., of the garage sought to be constructed, were complied with.
The basic question here for determination is the constitutionality of Section 4 of Ordinance No. 28, 1921, pertaining to the construction and regulation of garages in the city of Cincinnati. The part of Section 4 in question is as follows:
“Except when the Commissioner of Buildings otherwise approves, minor garages shall be located to the rear of the established line of the houses facing the street.”
*415 Unless prohibited by this ordinance, and the action of the building commissioner thereunder, the plaintiff is entitled to the relief prayed for. It is argued that this ordinance is within the police power which municipalities may exercise, and is a reasonable restriction. Thus, two questions are made. First, Is the ordinance within the police power ? Second, If within the police power, is it a reasonable exercise of that power?
While no satisfactory definition has been arrived at as to what the meaning of the term “police power” is, the authorities are uniform that such power is only exercised to guard public morals, safety, health and, under certain limitations, the public welfare. How can it be claimed that the location on the owner’s property of the garage invades any of the essentials necessary to bring the matter within the police power? Could it be said to be more unsanitary in front than at the rear of the premises, or at the side? How does it affect the public morals, or the public safety, by reason of such location? The public is not interested unless it in some way interferes with the public. The main contention is that the construction and location in front of the premises is detrimental to the neighborhood, and would depreciate the value of the property in the immediate vicinity, and it is sought' by this proposition to raise the question of public welfare. This position is untenable, as public welfare cannot be based upon injury to private property. It does not follow because an ordinance has been enacted for the ostensible purpose of guarding safety, health, comfort, or promoting general welfare, that it must be accepted as a proper *416 exercise of the police power of the state. The rule has been uniformly recognized that the owner of property has the right to make any use of it he desires that does not endanger or threaten the safety, health, comfort, or general welfare of the public.
In the case of Byrne, Inspector of Bldgs., v. Maryland Realty Co., L. R. A., N. S., 1917 A, 1216 (129 Md., 202), the syllabus is:
“The legislature cannot, in view of the constitutional protection of property rights, limit the buildings to be erected in a specified section of a municipalhy to separate and unattached dwellings not less than a specified distance apart.”
In that cáse, as in this, the main objection was by adjacent property holders claiming it would depreciate the value of their property, and the court in the opinion in that case says at page 209:
“It would undoubtedly be objectionable to some residents in close proximity to it, and it would undoubtedly depreciate to some extent the value of some property. But this Court has no. power under the plain and settled rules of law to prevent the construction of the houses. The Legislature had no power to pass the Act. The Act does not relate to the police power, and its enforcement would deprive the appellee of property rights guaranteed by the Constitution, which cannot be invaded for purely esthetic purposes under the guise of police power.”
The language used by the court in the case of Bostock v. Sams, 95 Md., 400, is much in point here:
*417 “It cannot be pretended that the citizen has not the common law right to acquire title to a lot of land, qualified or absolute, in a city as elsewhere and to build upon, and improve it as his taste, his convenience or his interests may suggest or as his means may justify without taking into consideration whether his buildings and improvements will conform in ‘size, general character and appearance’ to the ‘general character of the buildings previously erected in the same locality;’ even though there might be those in whose ‘judgment’ his so building might, in some way ‘tend to depreciate the value of surrounding improved or unimproved property.’ ”
Can it be claimed that the city may by ordinance provide and require that all citizens shall hereafter construct their porches to the front of the building, and prohibit their construction at the side, or other place they may desire, for the reason that all houses in that vicinity already have their porches in front ?
A citizen has always been supposed to be free to determine the style of architecture, the color of the paint, the kind of trees that he might plant on his lawn, the sort of clothes he and his family may wear, and could it be claimed that the city by ordinance, under the guise of police power prohibited all of these things for the reason that they might shock the esthetic taste of the neighbors.
Many cases distinctly hold that the police power cannot be exercised for purely esthetic purposes. Welch v. Swasey, 214 U. S., 91; Commonwealth v. Boston Advertising Co., 188 Mass., 348; 69 L. R. A., 817 (note); State v. Whitlock, 149 N. C., 542, *418 16 Ann. Cas., 765, and Quintini v. Board of Mayor and Alderman and Marshal of Bay St. Louis, 64 Miss., 483.
These cases on this question are cited and commented on for the reason that counsel for the defendants urge there is a leaning of the law toward regulation on esthetic grounds. We have found no case to support this proposition. Those cited in support thereof by counsel all involve some of the essential elements going to the proper exercise of police power. The question of the right of the individual to interfere with the owner’s use of his own property as he sees fit is settled in the case of Letts v. Kessler, 54 Ohio St., 73. That case is known as the “spite fence case.” Letts had constructed a high fence on his property line reaching to the roof of Kessler’s house, shutting off his light and air, which was constructed for no useful or ornamental purpose, but for motives of unmixed malice. The court held that Letts had a legal right to construct and maintain such fence and that neither law nor equity could compel its removal.
It may be conceded that under the police power the city has the right to regulate and restrict manufacturing and business properties, so as not to interfere with purely residential districts, but this harks back to the question of essential attributes of police power as they involve the matter of smoke, gases, noisome smells, noises and other objectionable elements going to the safety, health and comfort of the general public. There can be no question but that a city may provide by ordinance the plans and materials for garages, taking into consideration their location.
*419 In the case of State, ex rel. Book, v. City of Cleveland, 20 C. C., N. S., 538, the court holds:
“The section of a buildiiig code enacted by a municipal council, which prohibits the erection of any building for the working of wood or other combustible materials within sixteen feet of any lot line is an unreasonable exercise of the police power and is void.”
The ordinance under consideration is general in its provisions and places the location of a garage within the absolute control of the building commissioner, as to whether or not it may be placed forward of the established line of the houses facing the street. It does not state what the established line may be other than the hit and miss location of the several adjacent buildings. There could be no reason for the ordinance except upon esthetic grounds. As stated in the petition, and not disputed, the plaintiff has no other location upon which to place the garage. There is no objection as to the plans or materials to be used. It is common knowledge that the modern method of travel is by automobile. It is a matter of common knowledge that the automobile must have shelter. Many of the garages are placed under the houses of the owners. Even had council power to pass a valid ordinance on esthetic grounds, it is a matter of grave doubt as to whether the construction of the garage and the location indicated here would invade the field of eStheticism. But, however that may be, in view of our holding that the police power cannot interfere with private property rights on esthetic grounds, it is immaterial.
*420 In the case of Froelich v. City of Cleveland, 99 Ohio St., 376, the general principle is laid down' that the state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community, but that neither the state nor municipality may make any regulations which are unreasonable. This same principle was announced in Toledo Disposal Company v. State, 89 Ohio St., 230, and in Fitzgerald v. City of Cleveland, 88 Ohio St., 338, at page 359. See also Lenhart v. Hanna, ante, 182.
Without pursuing the question further, it is our conclusion that under the settled principles of law, as above stated, the ordinance and action thereunder are unreasonable regulations and not a valid exercise of the police power.
A decree may be entered in favor of the plaintiff, and. in junction allowed as prayed for.
Injunction allowed. \
Cushing and Buchwalter, JJ., concur.