(No. 22541.—

THE STATE BANK AND TRUST COMPANY, Trustee, *et al.*
Appellees, *vs.* THE VILLAGE OF WILMETTE, Appellant.

*Opinion filed October 22, 1934—Rehearing denied Dec. 13, 1934.*

KIRKLAND, FLEMING, GREEN & MARTIN, (WILLIS D. NANCE, A. H. STUART, DAVID FISHER, and WILLIAM H. SYMMES, of counsel,) for appellant.

HETH, LISTER & COLLINS, (RALPH D. SHANESY, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a decree of the superior court of Cook county declaring void a zoning ordinance, and amendments thereto, of the village of Wilmette, and enjoining the village authorities from enforcing said ordinance in so far as the same may tend to prevent appellees constructing on their lots at the northwest corner of Main street and Lake avenue, in said village, a public garage, gasoline filling station, oil filling station, gasoline or oil pump or pumps.

Appellees, who are the owners and lessees of the lots affected, made application to the proper village officer for a permit to erect a public garage, with two sets of gasoline pumps located outside of the building, on said lots. Following a refusal to issue the permit they filed their bill, alleging the invalidity of the zoning ordinance, and amendments thereto, as to the lots in question, in that they deny to appellees the lawful use of their property without due process of law and deny them equal protection of the laws, in violation of the fifth and fourteenth amendments to the constitution of the United States and section 2 of article 2 and section 22 of article 4 of the constitution of the State of Illinois. The prayer of the bill is that the ordinance, and the amendments thereto, be decreed to be void, and that an injunction issue restraining the village authorities from enforcing said ordinance and interfering with the construction and operation of the garage and gasoline pumps.

The answer was, in effect, a general denial of the material allegations of the bill.

Wilmette, a village of some 15,000 inhabitants, is situated north of the city of Evanston and south of the village of Kenilworth, in Cook county. In 1922 the village passed a comprehensive zoning ordinance dividing the village into "A residential," "B commercial" and "C industrial" districts. At that time Main street was about twenty-five feet wide from curb to curb and extended from the south limits of the village parallel to and adjacent to the west line of the right of way of the Chicago and Northwestern railroad. The ordinance zoned the lots in question and all lots abutting on Main street from Lake avenue north to the village limits in "A residential" district. In 1923 the ordinance was amended, zoning the aforesaid lots abutting on Main street as in "B commercial" district. In 1928 the State of Illinois, with the village and the county of Cook, widened Main street to a width of fifty-two feet and paved it. To pay for this improvement special assessments were levied against the lots abutting on Main street, including the appellees' lots. Upon completion of the new pavement Main street became an integral part of one of the arterial State highways, commonly known as and called the Green Bay road. Lake avenue, from Lake Michigan west to Waukegan road, is an important east and west street, designated as county route "QT." The evidence shows that on a rainy day during the hearing a count was taken of vehicles and pedestrians passing the intersection of Lake avenue and Main street, showing that between 7:00 A. M. and 7:00 P. M. a total of 7366 vehicles and 332 pedestrians passed. By the zoning ordinance as amended in 1923 all lots in the village abutting on Main street, except the first two blocks, part of the fourth and all of the fifth block south of Lake avenue, were zoned in "B commercial" district. The plats introduced in evidence show five garages in this "B commercial" district

and one on Central avenue between Main street and Park avenue, the latter being in an "A residential" district. This ordinance as then amended excluded from "B commercial" district filling stations but did not exclude garages.

Prior to March 1, 1932, appellees Shimonek and Hawekotte made application to the village board for a permit to erect a gas and service station on the lots in question, which application was referred to the zoning board, with instructions to investigate and report back. On April 22, 1932, appellees made application for a building permit to erect on the lots in question a garage and sales building sixteen feet high, constructed of brick with concrete foundations and a composition roof, and paid the required permit fee. On April 23, 1932, an amendment to the zoning ordinance was before the village board, which amendment excluded public garages and filling stations from the "B commercial" district. A hearing was then had thereon. Appellees attended the hearing and protested in writing against the adoption of the amendment. The zoning commission reported favorably on the amendment and on May 3, 1932, the board of trustees adopted it. The permit sought by appellees was thereupon denied and appellees filed this bill. The chancellor, after a full hearing before him, entered a decree in conformity with the prayer of the bill, finding the ordinance and amendments thereto void and perpetually enjoining the village and its officers from interfering with complainants in the erection and maintenance of a public garage and gasoline filling station, subject to the right of the village to require the payment of a garage license fee and subject to compliance by appellees with the building ordinances of the city. Appellant prayed an appeal to this court. The chancellor entered the appropriate certificate as to the validity of the ordinance involved and granted the appeal.

The points relied upon are: (1) The ordinances are a legitimate exercise of the police power, as the classifica-

tion has a rational relation to the public health, morals, safety and general welfare, and is therefore valid as reasonable exercise of the police power; and (2) the chancellor erred in the exclusion of certain evidence offered by appellant.

In support of its first contention, appellant's counsel review the evidence at length and argue that under the law applicable to the facts the decree should be reversed. They say (a) it is not even debatable that a garage and filling station located on the lots in question would adversely affect the health, safety, comfort, morals and welfare of the adjoining residential neighborhood; (b) there is no justification for placing a garage and filling station on these lots adjoining a residential district; and (c) the restriction excluding garages and filling stations from the lots in question being a reasonable one, the fact that it might work a hardship on the owner of the property does not afford ground for holding the ordinance unconstitutional. They urge, also, that the ordinance changing the classification does not destroy any vested interest.

The question first to be determined is whether the ordinance and its amendments have for their object the preservation of the public health, morals, comfort, safety or welfare and reasonably so tended, or whether they amount to an invasion of the property rights of appellees and constitute an unreasonable restriction on the use of their property. The privilege of every citizen to use his property according to his own will is both a liberty and a property right. Liberty includes not only freedom from servitude and restraint, but also the right of every man to be free in the use of his powers and faculties to pursue such occupation or business as he may choose and to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. (*Bjork* v. *Safford,* 333 Ill. 355; *Haller Sign Works* v. *Physical Culture Training School,* 249

id. 436; *Ruhstrat* v. *People,* 185 id. 133; *Frorer* v. *People,* 141 id. 171.) Both liberty and property are subject to the police power of the State, under which new burdens may be imposed upon property and new restrictions placed on its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, comfort, safety and welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. (*Bjork* v. *Safford, supra; Catholic Bishop* v. *Village of Palos Park,* 286 Ill. 400; *People* v. *City of Chicago,* 261 id. 16; *Bessette* v. *People,* 193 id. 334; *Bailey* v. *People,* 190 id. 28; *Ruhstrat* v. *People, supra.*) The legislative determination as to what is a proper exercise of police power is not conclusive. Whether the means employed have a real, substantial relation to the public health, comfort, safety or welfare or are arbitrary or unreasonable is a question which is subject to review by the courts, and in determining that question the courts will disregard mere forms and will interfere for the protection of rights injuriously affected by arbitrary and unreasonable action. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511; *City of Aurora* v. *Burns,* 319 id. 84.) The governmental power to interfere, by zoning regulations, with the general rights of the land owner by restricting the character of his use, though frequently recognized, is not unlimited, and, other questions aside, such restriction can not be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare. (*Nectow* v. *Cambridge,* 277 U. S. 183, 72 L. ed. 842; *Village of Euclid* v. *Ambler Realty Co.* 272 id. 365, 71 L. ed. 303.) A court will not, however, set aside the determination of public officers, in construing a zoning ordinance, unless it is clear that the ordinance has no foundation in the public welfare but is an arbitrary or irrational exercise of

power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense. *Village of Euclid* v. *Ambler Realty Co. supra.*

Individual rights in the ownership of property were not created by the constitution but existed before its adoption and are guaranteed by it. The declaration that private property shall not be taken for public use without just compensation or without due process of law is subordinated to the interest of the public welfare as expressed through the exercise of the police power of the State, but only where, and to the extent that, such exercise of police power bears substantial relation to the promotion of the public health, safety, morals or general welfare. The fact that substantial study has been given to the problems of such an ordinance before its passage is a matter for consideration in determining the reasonableness of the ordinance. It may be further observed that ordinances duly enacted lie behind the bulwark of presumptive validity and the burden is upon the one assailing them to reduce that shelter, but neither the study and investigation of zoning commissions nor the presumptive validity of the ordinance is controlling in the test whether the ordinance is a reasonable exercise of the police power. That matter is to be decided by the court from all the facts and circumstances shown. While the opinions of experts or of laymen that a certain restriction which has found its way into an ordinance governing the use of property is in the interest of public good, if fairly debatable, will not be disturbed by the courts, yet they are not final, but such restriction must face the test whether it is, in fact, in the interest of the public welfare. In thus considering that question each case is to be determined on its own facts and surrounding circumstances. *Forbes* v. *Hubbard*, 348 Ill. 166.

In deciding whether the invasion of property rights under a purported police power is unreasonable and con-

fiscatory, the degree in which the values incident to the properties are diminished by provisions of the zoning ordinance must always be considered. Such is to be determined from the facts of each particular case. (*Forbes* v. *Hubbard, supra; People* v. *Village of Oak Park,* 331 Ill. 406; *Penn. Coal Co.* v. *Mahon,* 260 U. S. 393, 67 L. ed. 322; *Village of Euclid* v. *Ambler Realty Co. supra.*) In the instant case it is conceded that the destruction of value in appellees' lots is very great. A test to be applied is whether such destruction of values promotes the public health, safety, morals or general welfare. [Aesthetic considerations, while not wholly without weight, do not of themselves afford sufficient basis for the invasion of property rights, and this for the more or less obvious reason that while public health, safety and morals, which make for public welfare, submit to reasonable definition and delimitation, the realm of the æsthetic varies with the wide variation of tastes and culture. So, while it has been held that all uses of property or courses of conduct which are injurious to the health, comfort, safety, morals and welfare of society may be prohibited under the sovereign power of the State though the exercise of such power result in inconvenience or loss to individuals, that power must find basis in the doctrine of overruling necessity or bear substantial relation to the public good and may not be based, alone, on æsthetic considerations. *Forbes* v. *Hubbard, supra; People* v. *Kane,* 288 Ill. 235; *Town of Cortland* v. *Larson,* 273 id. 602; *Haskell* v. *Howard,* 269 id. 550; *Haller Sign Works* v. *Physical Culture Training School, supra; Welch* v. *Swasey,* 193 Mass. 364, 79 N. E. 745.

We, then, are to test this ordinance by the above stated rules. If it has for its object and reasonably tends to preserve the public health, morals, comfort, safety or welfare then individual rights must yield to the higher rights of

the public. On the other hand, if it does not so tend but amounts to an invasion of property rights such ordinance is invalid.

Appellant's counsel do not contend that the business of conducting a filling station and public garage is a nuisance *per se,* but do say that appellant's evidence, together with the admission of appellees' witnesses, can lead to but the one conclusion—*i. e.,* that the restriction excluding from "B commercial" district the garage and filling station sought to be erected on the corner lots in question where the balance of the block is residential, tends to preserve adequate light and air and add to safety from fire and other dangers incident to such structures. They argue that congestion in the public streets will be lessened or avoided by this ordinance and that the public health, safety, comfort, morals and welfare will be promoted, and that under the law and facts there is a real, substantial relation to the public health, comfort, safety or welfare in the classification held unconstitutional by the trial court. In support of this contention they rely upon *People* v. *Ericsson,* 263 Ill. 368, *Jennings* v. *Calumet Nat. Bank,* 348 id. 108, and *Village of Western Springs* v. *Bernhagen,* 326 id. 100.

In *People* v. *Ericsson, supra,* a writ of *mandamus* which sought the issuance of a permit to erect a public garage on a certain street in the city of Chicago was denied. There was presented in that case the validity of an ordinance making it unlawful to erect or maintain a garage within two hundred feet of any building used as and for a hospital, church or public or parochial school or the grounds thereof, or any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes or within one hundred feet of any such street in any such block, without securing the written consent of a majority of the property owners according to frontage on both sides of the street. The chancellor held the ordinance valid and his conclusion was affirmed by this

court. In the instant case there is no question of frontage consents.

In *Jennings* v. *Calumet Nat. Bank, supra,* a decree was entered enjoining the installation and operating of a gasoline tank to be used as a part of and in connection with a gasoline filling station on the southwest corner of East Seventy-ninth street and Jeffery avenue, in the city of Chicago. The ordinance claimed to have been violated required frontage consents of property owners within a certain area surrounding the lot, and the main issue was whether measurements upon which necessary frontage consents and distances to schools, hospitals, churches or theatres are based must be made from the small area of that part of the lot· on which the tank was to be located and designated on the application for a permit, or from the boundaries of the entire lot on which the tank and gasoline pumps were to be located. It is readily seen that the question in that case is in nowise an analogous one.

In *Village of Western Springs* v. *Bernhagen, supra,* the chancellor entered a decree restraining the operation of a filling station erected on a lot located in and zoned in a residential district in violation of the zoning ordinance. The ordinance zoned the lot in question and all the surrounding territory in "A residential" district, restricted principally to single-family residences. On review by this court the only question presented was the reasonabless of the ordinance. In deciding that question this court said: "A court will not hold an ordinance unreasonable where there is room for a fair difference of opinion on the question, even though the correctness of the legislative judgment may be doubtful." The court there held the ordinance a reasonable exercise of the power conferred upon the village by the legislature and that the owner must conform to its provisions in the use of his property. In the instant case the property is zoned in a commercial district and not residential, as in the *Bernhagen case.*

In support of its contention that there is no justification for placing a garage and filling station on the lots in question adjoining a residential district, appellant points out that these lots are opposite the railroad right of way and an industrial zone commences in the next block. Appellant's counsel cite language used in *Kennedy* v. *City of Evanston,* 348 Ill. 426. In that case it was held that an amendment to the zoning ordinance of the city of Evanston re-classifying and re-zoning certain property was void because the evidence failed to show a sufficient change in conditions to warrant the amendment to the original ordinance. In the instant case the classification of the property in "B commercial" district is not questioned and is not in issue. The issue here is whether the exclusion of a garage and filling station from such district tends to promote the public health, comfort, safety or welfare of the village of Wilmette and its inhabitants. In the *Kennedy case* the city insisted, as does appellant here, that the fact that a majority of the property owners in and adjoining the district in question want the change is proof of the changing condition of the territory. Answer to that contention was there made that the power to amend is not arbitrary and cannot be exercised merely because certain individuals want it done or think it ought to be done. The change must be necessary for the public good. In the instant case it is conceded that conditions are substantially changed and justified the re-zoning of all the lots abutting on Main street as "B commercial" district instead of "A residential," as originally zoned. The earlier amendment permitted public garages to be erected on those lots, and the ordinance so remained until after appellees made application for a permit to erect a garage building thereon. The case cited is not controlling here.

Appellant, basing its argument on the assumption that the restriction excluding garages and filling stations from the lots in question is a reasonable one, argues the sound

conclusion that hardship upon the owner of property would not be ground for holding the ordinance void and unconstitutional. If the assumption be correct such argument is sound. But such argument assumes a determination of the principal question in this case, which, as disclosed by the record, is whether these restrictions are reasonable.

There is opinion evidence in the record that the building of a garage and filling station would tend to lower the value of adjacent property and would increase the fire hazard. There is no evidence, however, that the structure for which a permit was sought would affect insurance rates on adjoining property. The erection of any structure near to another has a tendency to create an additional fire hazard. Such does not tend to show that such restrictions in a commercial district are necessary for the public health, comfort, safety or welfare.

Appellant, to support this ordinance, cites *Hadacheck* v. *Sebastian,* 239 U. S. 394, 60 L. ed. 348. In that case Hadacheck brought *habeas corpus* for his discharge from the custody of the chief of police of Los Angeles on conviction of violating an ordinance making it unlawful for any person to establish or operate a brickyard or brick kiln within the limits of the city. Hadacheck had purchased a tract of land suitable for the manufacture of brick, erected thereon expensive machinery for such purpose and made excavations of considerable depth covering a large area of the property. He argued that because of the excavation the land could not be utilized for residence purposes or any purpose other than that for which it was then used, and that if the ordinance be declared valid he would be compelled to entirely abandon his business and be deprived of the use of his property. In sustaining the ordinance the Supreme Court of the United States held that the business was one which could be regulated, and that regulation was not precluded by the fact that the value of the investment made in the business prior to the legislative

action will be greatly diminished, and that no complaint could earlier be based upon the fact that petitioner had been carrying on the trade in that locality for a long period. The court further held that the evidence tended to show that the district had become primarily a residential section and that the occupants of the neighboring dwellings are seriously incommoded by the operations of petitioner, and that such evidence, when, taken in connection with the presumptions in favor of the propriety of the legislative determination, overcame the contention that the prohibition of the ordinance was a mere arbitrary invasion of private rights, not supported by any tenable belief that the continuance of the business was so detrimental to the interests of others as to require suppression. In that case it appeared that all the property surrounding that involved was strictly residential. In the case before us the property was zoned for commercial uses—not residential—and the question is whether the exclusion of garages and filling stations from "B commercial" district is a reasonable exercise of the police power for the protection of public health, comfort, safety and welfare. We are of the opinion that it is not. The fact that some property adjacent to these lots has been zoned as "A residential" district is not in itself reason supporting these restrictions, as the very nature of zoning requires that certain desirable neighborhoods adjoin others less desirable. *Kennedy* v. *City of Evanston, supra; Minkus* v. *Pond,* 326 Ill. 467.

To review all the evidence and the decisions cited would extend this opinion beyond reasonable length. In deciding whether the invasion of property rights under an ordinance is unreasonable and confiscatory, the degree to which the values of the affected property are diminished thereby must always be considered. Such is to be determined from the facts of the particular case. (*Penn. Coal Co.* v. *Mahon, supra; Village of Euclid* v. *Ambler Realty Co. supra; People* v. *Village of Oak Park, supra.*) In this case there

is no testimony tending to show the reduction of values of other property by reason of the construction of a garage and filling station on the property involved, other than the assertion by a number of witnesses that such use of the property under consideration would lessen the value of adjacent and near-by residential property, without stating to what extent their property would be damaged or the reason for basing such opinion. On the other hand, appellees' evidence is that to enforce the zoning ordinance would depreciate the property in question from $200 per front foot to $50. The test is whether such destruction of value promotes the public health, safety, morals or general welfare. Here the village, after the passage of the ordinance zoning this and all other property from Lake avenue north to the village limits fronting on Main street in "A residential" district, saw the necessity for a change in classification and no objection was interposed thereto. It re-zoned all that property as in "B commercial" district, later restricting the use of the lots in question. The evidence shows a changing condition at the corner of Main street and Lake avenue fully warranting the change to "B commercial," but the evidence does not show conditions warranting the amendment restricting the use of the lots already zoned for commercial purposes so as to exclude garages and filling stations.

As we view the record, no justification is shown for the restrictions imposed by the ordinance and amendment of May, 1932. There is, however, ample evidence to sustain the decree finding the ordinance and the amendments thereto void as to the property of appellees. The decree of the superior court is therefore affirmed.

*Decree affirmed.*