## Dobison et al. v. Zoning Board of Adjustment

*B. R. Wright,* for plaintiffs.

*Abraham L. Freedman,* City Solicitor, and *Matthew Bullock, Jr.,* Asst. City Solicitor, for defendant.

SLOANE, J., November 5, 1953.—This matter is now on appeal to this court by Penn Lumber and Building Supply Company from the Zoning Board of Adjustment of Philadelphia. The board refused to grant (a)

a variance from certain setback requirements[1] of the zoning ordinance, (b) either a temporary nonconforming use or a zoning permit for outdoor advertising purposes.

The lumber company leased the roof of a property (Washington Lane and Chew Street, southeast corner, zoned "A" commercial), for two directional signs, to guide those who want to find and reach the company's lumber yard three blocks away, the signs to be v-shaped, one facing Washington Lane,[1] the other Chew Street.

A hearing was held before the zoning board. Three protestants appeared; two were tenants of 554 East Washington Lane, the dwelling above the store property where the advertising space was rented; the third was the representative of the family next door, owners of 552 East Washington Lane: this adjoining property forms a twin residence with the corner, separated by a party wall.

The permit was refused by the zoning board. An appeal was taken to this court where, after additional testimony before President Judge Oliver, remand to the zoning board was made because (1) two of the three protestants had withdrawn their objections; (2) petitioners had agreed to conform to building setback requirements (8 feet instead of maintaining the signs at the building line). The zoning board heard the matter again and at this hearing petitioners made it clear they were willing to eliminate (1) the Washington Lane sign, retaining only the one on Chew Street, and (2) all neon letter lights if the board should feel such lights would attract insects and interfere with the comfort of nearby residents. The board

---

[1] Nothing is to be decided on these; the lumber company agreed to the setback; it also agreed to eliminate the sign facing Washington Lane.

again denied the permit. After a request for a rehearing was denied, there came this appeal.

First, I am asked to say to the zoning board that it has no sway over signs. The lumber company thus questions jurisdiction. The argument over a city's right to regulate signs has lost what merit it ever had since the two decisions respecting billboards in Chicago and St. Louis: Thomas Cusack Company v. City of Chicago et al., 242 U. S. 526; St. Louis Poster Advertising Company v. City of St. Louis et al., 249 U. S. 269. There are considerations, aside the auxiliary question of aesthetics, that give basis for constitutional propriety in regulating signs. See both cases above. Public welfare is more than a phrase[2] and above aesthetics (Liggett's Petition, 291 Pa. 109, 118; see Bryan v. City of Chester, 212 Pa. 259), though it may be that "the key to a science of values will be found in aesthetics".[3]

Now the city attains certain ends of public welfare through a zoning ordinance (1933) and amendments after enabling legislation: Act of May 6, 1929, P. L. 1551, 53 PS §3822 et seq. "A municipality, through a council, may and usually does possess legislative power within the authority conferred": Perrin's Ap-

---

[2] Cf. Holmes dissent in Springer et al. v. Government of the Phillipine Islands, 277 U. S. 189, 209-10:

"Property must not be taken without compensation, but with the help of a phrase, (the police power) some property may be taken or destroyed for public use without paying for it, if you do not take too much."

And see Hudson Water Company v. McCarter et al., 209 U. S. 349, 355; Miller et al. v. Milwaukee, 272 U. S. 713, 715: ". . . the court must consider the public welfare rather than the artifices contrived for private convenience and must look at the facts."

[3] In 1920 one court said:

"It is time that courts recognized the aesthetic as a factor in life": State ex rel. v. Houghton, 144 Minn. 1, 20, 176 N. W. 159 (1920). And see Aesthetic Regulation under the Police Power, 80 U. of Pa. L. Rev. 428.

peal, 305 Pa. 42, 49. And zoning both in statute and ordinance has to do with buildings and their uses, and uses accessory thereto (see section 16(27) of the zoning ordinance).

Section 1 of the ordinance provides:

"From and after the date of the approval of this ordinance *the use of all land and every building erected,* altered in regard to height and area, added to, or relocated, and every use within a building or *use accessory thereto,* in any district, shall be in conformity with the provisions of this ordinance." (Italics supplied).

Section 1 by its plain words, ex statuto, includes accessory use, and section 2 defines "accessory use":

"An accessory use is a use subordinate to the main use on the lot and customarily incidental to the main use."

Section 16 of the ordinance enumerates the uses permitted in "A" commercial districts; subsection 27 of section 16 allows, "accessory uses customarily incidental to any of the above permitted uses".

We do not have to smuggle or stumble into the meaning of "accessory use" to find that the maintenance of a sign on the roof of a linoleum store, or on the side of such store, or projecting therefrom, advertising the business there located, is a use "customarily incidental to the main use". The property is in an "A" commercial district where such accessory uses are permitted: Section 16(27). But not only by implication, not only res et ratio does the ordinance include signs. Express mention comes in section 7(14) which regulates their use in "A" residential areas (the physician's shingle, for example) and prohibits specifically the use of advertising signs in those areas. Thus, signs, as such, were intended to be regulated under the ordinance, and this proposition is strengthened when the purposes of the ordinance are kept in

mind. Section 29(1) sets forth the conditions under which zoning permits are required and section 29(2) the conditions under which use registration permits are required. These sections would require that permits for an "accessory use" under section 16(27) be obtained from the appropriate bureau, and wherever such accessory use is in the nature of a sign, it is necessary to apply for a permit for the erection of such sign.

Petitioners' contention upon jurisdiction, that the zoning ordinance gives the board no power to regulate signs, cannot be sustained. Zoning laws should be given a fair and reasonable construction in the light of the manifest intention of the legislature and the objects sought to be attained: Perrin's Appeal, 305 Pa. 42, supra.

To be valid, a zoning regulation must carry with it the incidents necessary to a sanctioned exercise of the welfare power: Perrin's Appeal, 305 Pa. 42, supra. It is because the constitutional basis of a zoning ordinance is cored into public welfare that this power must prescribe the outer bounds beyond which such regulation may not go. Regulation should not be allowed to declare itself absolute; it must have limitations: Washington ex rel., Seattle Title Trust Company, etc., v. Roberge, 278 U. S. 116; Welch v. Swasey et al., 214 U. S. 91. Thus, governmental interference with the rights of a landowner by restricting the character of his use of land is allowable only if the restriction or limitation imposed bears a substantial relation to the public health, safety, morals. or general welfare. The transcendence of the public good is the high value which tolerates restraint on the use and enjoyment of private property. See Euclid v. Ambler, 272 U. S. 365. Where ordinances attempted to regulate billboards and signboards without the persuading point of health, safety, morals (general welfare), courts have invali-

dated them as a taking of private property without compensation being made therefor: Bryan v. City of Chester, 212 Pa. 259; Pittsburgh Poster Advertising Co. v. Swissvale Borough, 70 Pa. Superior Ct. 224.

The sign in question here is not a nuisance either in law or in fact. Petitioner has agreed to dispense with neon or other lighting attracting moth or insect. There is nothing then to sustain the denial of a permit on the basis of the public health.

It is doubtful that the sign interferes with whatever light and air protestant may claim from the Chew Street direction but, assuming such intereference, it must be said that property owners have no easement in light or air either by implication upon severance of dominant from servient tenement (Rennyson Appeal, 94 Pa. 147 (1880)) or by permissive use from any length of continuous enjoyment: Haverstick v. Sipe, 33 Pa. 368 (1859). Nor can an easement in light or air be acquired by prescription or adversely: Cohen v. Perrino, 355 Pa. 455.

The fact that the continuance of the use which is prohibited might result in partial obstruction of wind or air on nearby property is not in itself sufficient to impose the prohibition: Quintini v. Bay St. Louis, 64 Miss. 483, 1 So. 625 (1886). And it has been ruled that an adequate basis for the support of the restriction of the use of one's property by a zoning ordinance is not furnished by the mere fact that certain uses have a depressing effect on some people. See Annotations in 86 A. L. R. 670; 117 A. L. R. 1117. In determining the validity of a zoning restriction, the character or nature of the neighborhood may be considered: Nectow v. Cambridge, 277 U. S. 183; Averne Bay Construction Co. v. Thatcher, 278 N. Y. 222, 15 N. E. 2d 587 (1938). It has been held proper also to consider the fact that the property is near a much used highway: State Bank and Trust Co. v. Wilmette,

358 Ill. 311, 193 N. E. 131 (1934). Indeed, zoning laws permitting property in certain zones to be used for retail stores often expressly authorize uses accessory thereto which do not alter the character of the premises or impair the neighborhood: Petros et al., v. Superintendent and Inspector of Buildings, 306 Mass. 368, 28 N. E. 2d 233 (1940).

The sign is a directional sign advertising petitioner's lumber yard. It is neither indecent nor obscene and cannot by any stretch be said to involve morality.

The sign does not endanger the passing public; it is not a fire or other hazard that could sustain regulation under public safety.

It is to be added that the property is "A" commercial, where retail stores and accessory uses are permitted. Though the precise meaning of "accessory use" is not declared by the ordinance, still the discretion vested with the board as to what is an accessory use is not an unfettered one. Even denial of a permit for an accessory use must be founded on some phase of public welfare. Mere aesthetic or artistic objections are not sufficient for denial. See Liggett's Petition, 291 Pa. 109, supra; Lord Appeal, 368 Pa. 121. The very terms of the ordinance permit in such districts the erection of second stories, funeral parlors, bowling alleys, coal yards, garages, freight stations and drill halls. With this permissive circumstance, we can see no harshness in a sign on the roof of a retail store and no more a detraction from the general tenor of the neighborhood than any of the permitted uses.

No possible construction of public welfare can sustain the board's denial of the permit to erect the sign as an accessory use. Wanting a public welfare basis, the general character of the neighborhood as an "A" commercial district, the several uses the ordinance itself allows, with or without a special permit, the fact of only one protestant whose objection is that the

"view of Chew Street" is cut off (invalid in fact and law) and that the sign is a "monstrosity", the presence of signs on two of the other corners and billboards illuminated with floodlights on a third corner, the fact that the property borders on a United States highway (no. 422) and is passed by some 15,000 automobiles within a 12-hour period—these considerations work strongly and persuasively against the board's decision. A denial of the right to use one's property under these circumstances for the maintenance of a sign is a deprivation of property without due process. Where no reasonable relation exists, a regulation should not be permitted; there is not even the guise of public welfare.

"All property is held in subordination to the right of its reasonable regulation by the Government clearly necessary to preserve the health, safety or morals (or general welfare) of the people . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary, or unreasonable intermeddling with the private ownership of property, even though such acts be labelled for the preservation of health, safety, and general welfare.": White's Appeal, 287 Pa. 259, 265-66.

The right to own property and to use it includes the right to lease it and permit its use; and a leasehold interest is one in land, "an estate in the true sense, but its common law nature as a chattel real (to distinguish it from ordinary chattel interests in personalty and to indicate its relation to real property) has not been altogether obliterated": Moynihan, Preliminary Survey of the Law of Real Property, 31 (1940).

It has been held that the right of visibility in regard to the use of land for advertising purposes, whether it be of a business located on the premises or elsewhere, is in the nature of an easement appurtenant, which inheres in the land and is within the constitutional

safeguards protecting property rights, so that one who leases the whole or part of the land for the purpose of erecting a billboard on it acquires the same right as the owner has: Murphy v. Westport, 131 Conn. 292, 40 A. 2d 177 (1944). Thus, the owner's right to use his land for advertising purposes is a property right which is transferred to the tenant by the leasehold agreement when such agreement is for the leasing of space for such accessory use. The lessee acquires the same right in kind and degree as the owner. Where a borough ordinance permitted display of signs in a commercial district relating to a business conducted on the premises, it was held that such an ordinance could not be construed to prevent the maintenance in such commercial district of a sign advertising an industrial plant outside the commercial district. Any such attempted restriction was held to have no police power basis: Prospect Park Borough v. McClaskey, 151 Pa. Superior Ct. 467. Petitioner here is in the same status, a lessee of roof space for the purpose of advertising his business, located elsewhere, just as the owner, Sara Cohen, could have erected such a sign to advertise a business elsewhere under the "accessory use" permitted in an "A" commercial district.

And so we ask: What ground exists for the denial by the zoning board of petitioner's permit in the instant case? Clearly, no interest of the public health, safety, morals (public welfare) warrants the board's denial. Are aesthetic considerations[4] alone, then, the basis for the board's decision? If so, it can be said that we are not here concerned with a residential section.

---

[4] See General Outdoor Advertising Co. v. Department of Public Works, 289 Mass. 149, 193 N. E. 799 (1935), 48 Harvard L. Rev. 847; Aesthetic Zoning Regulations, 25 Mich. L. R. 124; The Attitude of the Law Toward Beauty, 8 ABA Journal 470; Unaesthetic Sights As Nuisances, 25 Cornell L. Q. 1; Aesthetics in Zoning, 14 Minn. L. R. 109; Public Aesthetics and the Billboard, 16 Cornell L. Q. 151.

And the recent decision in Lord Appeal, 368 Pa. 121, reaffirms the right of a court to upset a zoning restriction based on aesthetic grounds. That case is to the point here. It involved an appeal by an applicant for a zoning permit from the refusal of the zoning board of adjustment to direct issuance of a permit for the erection of a radio tower with antenna mast. The lower court sustained the appeal and ordered that a permit issue, thus reversing the zoning board's decision that such permit was not allowed under the ordinance as an accessory use in a "B" residential district, despite the provision of the ordinance permitting an accessory use in a "B" residential district "on the same lot with and customarily incidental to any of the above permitted uses and not seriously detrimental to a residence neighborhood, including a private garage."

The Superior Court (168 Pa. Superior Ct. 299, sub nomine Munhall Borough Appeal) reversed the order of common pleas on the ground that the proposed antenna mast was not an accessory use within the meaning of the ordinance and thus constituted a violation thereof, and that the decision of the zoning board of adjustment was not a manifest abuse of discretion. Our Supreme Court held the antenna mast to be a permitted accessory use in "B" residential districts and within the statutory scheme. The purpose of the ordinance was referred to in order to show that zoning regulations are made "with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the borough."

The court considered the effect of the structure on the value of surrounding residential property, but refused to be concerned with whether the mast was unsightly, saying that aesthetic considerations alone were not a sufficient basis for imposing limitations on the use of private property.

There is no omneity in the board's discretion and where abuse lurks in its pronouncement we are free of hesitation to say so. There should be a reason for the board's will; we searched the record and found none. The refusal of the zoning board of adjustment to permit the erected sign to stand was an abuse of discretion. See Alden Park Corporation v. Zoning Board, 84 D. & C. 40.

*Order*

And now, November 5, 1953, the action of the zoning board of adjustment is reversed and the record is remitted to that board to issue a use registration permit approving the erection of the sign here in question.