# Rennyson's Appeal.

A. owned a house and an adjoining lot at the corner of Green and Fourth streets, in Bridgeport borough. In the back building of the house were windows overlooking Green street, and also two windows overlooking the adjoining lot. In 1870, A. sold the house to B., and in 1875, A. commenced to erect a house on the adjoining lot, which would close the windows overlooking the same. The grantee of B. filed a bill in equity to restrain the erection of the house: *Held*, that there was no implied grant of light and air in the conveyance by A. to B., beyond what was really necessary, and it appearing that there was no such necessity, in view of the location of the house, the court would not interfere.

March 24th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Montgomery county*: Of July Term 1879, No. 71. In Equity.

Bill in equity filed by William Rennyson against Isaac Rozell to restrain the erection of a house which closed two windows in plaintiff's house.

The bill set forth that the defendant, in 1867, owned a certain messuage and two tracts of land, used as one, in the borough of Bridgeport, Montgomery county, situated on the south-east corner of 4th and Green streets; that on the 9th of June 1870 he conveyed said messuage and part of said tract of land to W. D. Wilcox, who in 1871 conveyed the same to plaintiff; that at the time of the conveyance to the said defendant, and at the time the defendant conveyed to the said Wilcox, in the messuage on said property, there were two windows overlooking the balance of said real estate, which furnished light and air to the occupants of said dwelling-house; that said dwelling-house was erected about eighteen or twenty years ago; that defendant, about the 28th of

September 1875, commenced the erection of a building on the premises unconveyed, upon the *property adjoining* the property of plaintiff, and by means whereof, if the building is completed, will shut up and obstruct the windows of plaintiff, and deprive him of the light and air he now uses and enjoys from them; that one of said windows in plaintiff's house is on the first floor, and the other one is on the second floor; that plaintiff will suffer irreparable injury if the said building is erected and his windows closed up.

The bill then prayed for an injunction.

The answer of the defendant set forth that the "plaintiff has other windows on the opposite side of his building, which are ample for all purposes of light and ventilation; that there is no necessity for the maintenance of the windows of the plaintiff overlooking my lot for the reason already mentioned, and if I am prevented from building on the line of my lot so as to obscure the same, my said lot cannot be improved in the usual way, and will be comparatively valueless for such purpose; that the proposed building on my lot is wholly within the limits of my own property, and that the probable erection of a building on my line, close to the windows of the defendant on that side, was contemplated, and perfectly understood by William D. Wilcox at the time of the sale and conveyance of the defendant's premises to the said Wilcox by me."

The master, inter alia, reported that "the windows closed by the defendant in erecting his building were certainly convenient in affording light and air to the plaintiff, but were not absolutely necessary for that purpose. At the time the house of plaintiff was built, and ever since side windows have existed on the northwest side thereof, which afford the light and air necessary for the enjoyment of the building." He therefore held that as no necessity existed for the windows, the court should not enjoin, and recommended that the bill should be dismissed. The plaintiff filed exceptions, which the court, Ross, P. J., dismissed and confirmed the report, delivering the following opinion:—

"It is certainly true, that the question presented by this record has not been definitely ruled in Pennsylvania; and it is equally true that the English authorities have not been recognised or adopted by our court of last resort. The doctrine of ancient lights, and the right to light and air, by prescription, has as yet no recognition in our Commonwealth : Hazlitt *v.* Powell, 6 Casey 296; Wheatley *v.* Baugh, 1 Id. 528; Hoy *v.* Sterrett, 2 Watts 331.

"In Wheatly *v.* Baugh, *supra*, Lewis, C. J., says: 'The Roman law, founded upon an enlightened consideration of the rights of property declared, "that he, who in making a new work upon his own estate, uses his right without trespassing either against any law, custom, title or possession which may subject him

to any service towards his neighbors, is not answerable for the damages which they may chance to sustain thereby, unless it be that he made that change merely with a view to hurt others without any advantage to himself. He may raise his house as high as he pleases, although by the elevation he should darken the light of his neighbor's house." * * * These principles of the civil law are also the recognised doctrine of the common law : Bury v. Pope, 1 Cro. Eliz. 118 ; Parker v. Foote, 19 Wendell 309 ; 2 Watts 331 ; 18 Pick. 121. It is true that several English nisi prius decisions introduced a modern doctrine in relation to ancient lights, in opposition to that held in the reign of Queen Elizabeth by all the judges in the Exchequer chamber : 1 Cro. Eliz., *supra.* But the modern doctrine was never recognised by the King's Bench, until the decision in 2 Saund. 175, note 2. As that decision was since the American Revolution, after which the English courts ceased to have authority here, and is an anomaly in the law, the modern doctrine founded upon it has not been received as suitable to the condition of this country : 19 Wend. 309 ; 2 Watts 331.' It is clear from this extensively cited authority that the English rule of new adoption comparatively does not prevail in Pennsylvania. Following this case, LOWRIE, C. J., says in Haverstick v. Sipe, 9 Casey 370, ' It has never been considered in this state that a contract for the privilege of light and air, over another man's ground, could be implied from the fact that such a privilege has been long enjoyed, or that on a sale of a house and lot, such a contract would be implied, from the fact that such a privilege has been long enjoyed; or that on a sale of a house and lot such a contract could be implied from the character of the improvements on the lots sold and the adjoining lots.'

"There is, therefore, no rule of the English courts which is final and conclusive in Pennsylvania. The case is to be adjudged, therefore, either upon general principles applicable to our civilization, and in accordance with general public policy, or to be determined by the light cast by the decisions of our sister commonwealths.

"To adjudicate the question fairly, the proposition to be adjudged must be distinctly stated and clearly understood.

"It is clear that Mr. Rozell, the defendant, is the owner of the servient tenement. The plaintiff purchased with his house and windows overlooking the lot of the defendant. The latter built, closing the windows of the former, and the question presented is, whether a servient tenement can close the windows on one side, and thus deprive the dominant tenant of the light and air which he desires from that side. I think I have stated the question fairly. It is new in Pennsylvania, and it is entitled to a broad ruling The law should be clear on so important a topic and this court will

endeavor to rule so explicitly that all doubt will be at an end when its conclusion is affirmed or denied by the court of last resort.

"The inquiry is by no means free from difficulty. This question has never been distinctly met and ruled in Pennsylvania; and in other states the rulings are conflicting. Haverstick *v.* Sipe, *supra*, is the case of a dominant tenant, and, while in dictum it is decisive, is, upon the question involved by this record, no more than a dictum. Though largely cited it does not definitely rule, as contended, or as quoted. One case has been ruled in Pennsylvania by Finletter, J., Kay *v.* Stallman, 2 W. N. C. 643. This stands alone, and is, I have no doubt, well ruled under the special facts of the case, which, when understood, demonstrate that the dominant tenement would have lost its light and air, and also its means of access, if the erection upon the servient tenement had been maintained. This case, therefore, involves the question of necessity—an element which the master here has found is not involved by this record.

"In other states two cases stand prominently forward. They conflict as to their conclusions; are to a great extent irreconcilable upon general principles, and are pressed upon the court by the able contending counsel, who have made this case a specialty; and who, by their intellectual exertions, have awakened a vivid interest in the court. It cannot be denied that Story *v.* Odin, 12 Mass. 157, rules the point at issue, so far as the opinion of the court is concerned, squarely; for it does declare that the owner of a servient tenement may not interfere with the light and air of the owner of the dominant tenement. This clearly is the force and scope of the opinion, though the special facts of the case would have sustained the judgment on the ground of necessity. If it stood alone I should be governed by it, notwithstanding the wise dictum of Haverstick *v.* Sipe, *supra*, and the modifying influences of Kieffer *v.* Imhoff, 2 Casey 445; 6 Casey 293 to 299, as well as of Washburn on Easements 589, 590, and authorities there cited. A careful examination of Maynard *v.* Escher, 5 Harris 226 (a case miscited through error in the syllabus), 6 Casey, *supra*, of 14 Wright 423, and the authorities cited by AGNEW, J., will demonstrate that the broad ruling of Odin *v.* Story, *supra*, has not been adopted in Pennsylvania. Still, as has been said, a respectful regard for the Supreme Court of Massachusetts, would induce me to follow its ruling were there no other adjudicated cases. But the same tribunal, at a much later period, in Keats *v.* Hugo, 115 Mass. 208, adopts a different rule, and one which accords with my own views of this question, as affected by public policy and business interests. I understand this case to overrule Story *v.* Odin, or, at least, to explain it to such an extent that its rights as a precedent fall. Story *v.* Odin was ruled in 1815 by Jackson, J., and it will be noticed that it is based upon English authorities, and

that its reasoning is therefore weakened in Pennsylvania by what is said by our Supreme Court in Wheatley *v.* Baugh, *supra.*

"Keats *v.* Hugo was ruled in June 1874, and beginning with Story *v.* Odin reviews in analytical detail all the cases adjudicated in Massachusetts, and some other states, upon this question. This case rules that the easement of light and air is not implied from the grant of a house having windows overlooking land retained by the grantor. It declares that since Story *v.* Odin and the *obiter dicta* in 12 Mass. 220, 17 Id. 443, 1 Sumn. 492, the cases have been more fully considered on principle, and that the tendency of judicial decisions in Massachusetts and most other states has been to deny the doctrine of acquiring a right to light and air by presumption or implication. Chief Justice Gray adds : 'In no judgment of this court, since Odin *v.* Story, has any right of light or air been upheld except by express grant or agreement.' In this most learned and exhaustive opinion, the learned judge first notes that Odin *v.* Story is based upon English authorities; that neither in the opinion of the court, nor in the argument of counsel is it suggested that a different rule may be required by the exigencies of a new country, with new wants, under a new and developing system of civilization and improvement; and that the facts of the case themselves did not require a decision upon the general principle. He then reviews the authorities at great length. Among these is Collier *v.* Pierce, 7 Gray 18, which has the authority of Chief Justice Shaw to uphold it. I will not pause to cite the other authorities quoted in the opinion. Many of them are used to show the tendency of the courts to hold, in this country, that easements of light, air, overhanging projections, are not implied in favor of the dominant as against the servient tenement. The principal case is strong, clear and most emphatic, and its concluding reasoning is so sound that I cannot forbear quoting it *in extenso.* 'By nature air and light do not flow in definite channels, but are universally diffused. The supposed necessity for their passage in a particular line or direction to any lot of land is created not by the relative situation of the lot to the surrounding lands, but by the manner in which that lot has been built upon. The actual enjoyment of the light and air by the owner of the house is upon his own land only. He makes no tangible or visible use of the adjoining lands, nor indeed any use of them which can be made the subject of an action by their owner, or which in any way interferes with the latter's enjoyment of light and air upon his own lands, or with any use of those lands in their existing condition. In short, the owner of the adjoining land, has submitted to nothing which actually encroached upon his rights, and cannot, therefore, be presumed to have assented to any such encroachment. The use and enjoyment of the adjoining lands are no more subordinate to those of the house where both are owned by one man, than where the owners

are different. The reasons upon which it has been held that no grant of a right to light and air can be implied from any length of continuous enjoyment, are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the right of such a grant in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and use of lands, is, that no right of this character shall be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed.' * * * ' Considering, therefore, that by the preponderance of reason and authority no grant of any right of light and air over adjoining lands is to be implied from the conveyance of a house, we have only to apply this rule to the facts.' In 1876, Doyle et al. *v.* Lloyd et al., N. Y. Rep., per Earl, J., this doctrine, there styled the ' American doctrine,' as to light and air, is distinctly recognised, the learned judge citing Keats *v.* Hugo, *supra;* Parker *v.* Foote, 19 Wend. 315 : 2 Sand. (S. C.) Rep. 316; Myers *v.* Gemmel, 10 Barb. 537; Mullen *v.* Stricker, 19 Ohio St. 135; Haverstick *v.* Sipe, 9 Casey 368.

"(Doyle *v.* Lloyd, *supra,* it may be parenthetically remarked, involves the distinction which seems to sustain the ruling in Kay *v.* Stallman, 2 W. N. C. 643, by Finletter, J.)

"In Turner *v.* Thompson, 58 Ga. 268, reported in 24 Am. Rep. 497, it was ruled, that where land was sold with a house on it, having windows overlooking the adjacent land of the grantor, that the latter was not estopped from obstructing the windows, unless they were necessary to give light and air to the house; or, if sufficient light and air could be derived from other windows open, or that might be commonly opened elsewhere in the house. This case was evidently most carefully considered; it reviews the earlier Massachusetts and New York decisions, adopts Keats *v.* Hugo, and the reasoning of Chief Justice Gray, and of Mitchell *v.* City of Rome, 49 Ga. 19 (15 Am. Rep. 669). It is worthy of remark, however, that this case limits the general application of Keats *v.* Hugo as between dominant and servient tenement in one important respect. I think the limitation is wise and right. It is, that an implied easement of light and air will be sustained in case of real necessity : Powell *v.* Sims, S. C. of West Virginia, 13 Am. Rep. 629. Many more cases might be cited, and I have examined every case on the briefs of counsel, save one from Lord Raymond; but enough has been done to justify the conclusions of law which I am about to reach, and which I think should become the law of Pennsylvania :

"1. No implication of a grant of the right to light and air

arises upon a sale of one of two adjacent lots having a house upon it, with windows overlooking the land of the grantor.

" 2. The grantor, by such sale, is not estopped from improving his retained lot by building upon it, though his erection darkens the windows of his vendee, and excludes the access of light and air from such windows.

" 3. That the limitation of these two propositions depends upon the fact as to whether such windows are a real necessity for the enjoyment of the grantee's property. If they be, then the implication of the grant of an easement of light and air will be sustained: if they be not, or can be substituted at a reasonable cost, with a view to the purposes of the dominant tenement, then such implication will be denied and rejected.

" 4. The American doctrine as to light and air requires an express grant or agreement, unless a real and actual necessity exists, to vest a dominant tenement with such right.

" 5. The doctrine of ancient lights is not recognised in Pennsylvania.

" These principles being determined, and there being no express grant or agreement disclosed in the facts reported by the master, but one question of fact arises upon the case as presented by the master.

" Are the windows, closed by the defendant's erection upon his own lot a real and actual necessity for the purpose of furnishing the necessary light and air to the house of the plaintiff? The master has found they were not, and when it is remembered that the house of the plaintiff is at the corner of a street in an incorporated borough, it is hard to conceive how the master could reach a different conclusion, particularly in the light of the testimony of the witnesses.

" One other inquiry remains. Mr. Widdecombe, a former owner of the premises, declares that he bought the lot now owned by the defendant for two purposes, one of which was to obtain more light and ventilation, and that he sold the two lots together to Mr. Wotton as a whole. I cannot see how this can affect the case. The purposes for which a former owner purchased property cannot affect the use and rights of his vendees or alienees, unless such purposes are covenanted for, are actually or constructively known to such alienees, and are in the nature of contracts or covenants which may be enforced between themselves or by others. The deed in fee bars the grantor, and a mere purpose on his part will not control his alieners. Mr. Widdecombe could have changed his purpose and built upon the lot while he was the owner of both; his vendee, unrestricted by covenant, may do the same. The bill cannot be sustained on this ground. The master has elaborated the other questions with sufficient clearness, and all the exceptions to his report are overruled.

[Rennyson's Appeal.]

"In conclusion, it seems proper to add one word. The motion for a preliminary injunction was refused after brief hearing; and though I then formed a clear idea of what the 'American doctrine' ought to be, no time was given, nor argument made to and upon that hearing, which involved the exhaustive research displayed by counsel in the final argument.

"I have carefully and patiently considered all the cases cited, and tested the clear and forcible reasoning of counsel by the authorities now within my reach, and have endeavored—I believe successfully—to hear the case *de novo*. But were there no authorities, I am clearly of opinion that the law should be as I have found it. Public policy requires that in a new and developing country the spirit of improvements of betterments should not be chained and handicapped by the law. With the limitation of an implication arising from real and actual necessity, the time-honored and equitable maxim of *sic utere tuo non alienum lædas*, is carefully observed. If the principles of Story *v.* Odin were to prevail, one with a series of town lots would, after the sale of one, imply a grant as to two others immediately adjoining that would destroy them for building purposes, and a one-story house would be compelled to remain one story because its dominant tenement had two. All improvement would be stayed, values would be destroyed, and alienations, except under special contracts, rendered dangerous for the future and ruinous in the past.

"Our court of last resort, in Bentz *v.* Armstrong, 8 W. & S. 40, approved in Young *v.* Leedom, 17 P. F. Smith 351, indicated that the agricultural rule of drainage as between servient and dominant tenements cannot apply in boroughs and incorporated towns. The reason is that no lot could be filled up and graded, or be adapted to building purposes, if such rules prevailed in towns. If that conclusion be sound within the scope of the maxim, *sic utere tuo*, &c., surely the same spirit of public policy would protect lotholders in boroughs, towns and villages in regard to implied rights of light and air, even though a different rule prevailed in agricultural lands. But I think this opinion shows that, except in Maryland and New Jersey, a different rule does not prevail."

The plaintiff took this writ, assigning for error the decree of the court.

*Charles Hunsicker* and *E. Coppée Mitchell*, for appellant.— Where one sells a messuage having doors or windows opening into a vacant lot adjoining and belonging to the vendor, without reserving a right to build on such lot, or to stop the doors and windows, neither he nor his grantee of such lot can lawfully stop them: Story *v.* Odin, 12 Mass. 157 ; Grant *v.* Chase, 17 Id. 447 ; Lampman *v.* Milks, 21 N. Y. 505.

The doctrine of these cases has been recognised by this court in

[Rennyson's Appeal.]

Hazlett *v.* Powell, 6 Casey 293; Maynard *v.* Esher, 5 Harris 226; Kieffer *v.* Imhoff, 2 Casey 443; Kay *v.* Stallman, 2 W. N. C. 643.

The reasoning of the court below results in holding that there must be a necessity for light and air, and when such necessity exists then the implication of an easement for that purpose arises. But when is it necessary? The learned court lays down no way of ascertaining it. If the house is light, cheerful, and comfortable, and healthy, with the windows, and dark, gloomy, uncomfortable, and unhealthy, without them, it would seem that the very circumstances exist which, under the rulings of the court, would entitle us to the decree prayed for.

*B. M. Boyer*, for appellee.—The English doctrine of ancient lights and the right to air and light by prescription has never been adopted in this state: Hazlett *v.* Powell, *supra;* Hoy *v.* Sterret, 2 Watts 331.

It has never been considered in this state that a contract for the privilege of light and air over another man's ground could be implied from the fact that such a privilege has been long enjoyed, or that on a sale of a house and lot such a contract could be implied from the character of the improvements on the lots sold and the adjoining lots: Haverstick *v.* Sipe, 9 Casey 371.

There is no Pennsylvania case in which the principle stated in Haverstick *v.* Sipe has been overruled. A different principle has been applied to rights of way, and the Pennsylvania authorities relied upon in the plaintiff's argument generally relate to easements of that description.

In Story *v.* Odin, 12 Mass. 157, which is the earliest American case, the law was stated in accordance with the English authorities. But it is to be observed that no suggestion appears to have been made of any difference between the laws of the two countries in this respect, and that the facts of the case hardly required a decision upon the general question. But Story *v.* Odin has since been overruled in Keats *v.* Hugo, 115 Mass. 208.

The reasons, upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment, are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express

[Rennyson's Appeal.]

grant of an interest in, or covenant relating to, the lands over which the right is claimed.

The judgment of the Supreme Court was entered, May 3d 1880,

PER CURIAM.—The learned president of the court below has discussed the question involved in this case in an opinion so able and exhaustive that it is unnecessary that we should add anything to it. We affirm this decree upon that opinion.

> Decree affirmed and appeal dismissed at the costs of the appellant.