JAMES T. KNIGHT *v.* JOHN O. MITCHELL.

[No. 27, October Term, 1927.]

*Decided January 10th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William H. Surratt* and *Paul R. Hassencamp,* for the appellant.

*Raymond S. Williams* and *Roger B. Williams,* with whom were *Albert E. Donaldson* and *Hershey, Donaldson & Williams* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

In this case the owner of a lot of ground next to a corner lot in Baltimore City sought an injunction to prevent the owner of the corner lot from building over a yard, up within two feet of the inside line of his property, as that would darken windows of the complainant's house which have long overlooked the yard and received light across it. The two lots were formerly owned by a single owner, and the claim

to continued enjoyment of the light for the inside lot is based upon the principle applied by this court in *Cherry v. Stein,* 11 Md. 1, *James v. Jenkins,* 34 Md. 1, and other cases, that if an owner of united properties renders one part dependent upon another for light or other convenience and then sells off the dependent portion, he is presumed to grant with that portion the easement over the remaining portion upon which he made it depend. The injunction was denied and the bill of complaint dismissed, and the complainant appeals.

The lots are on the northwest corner of Eutaw Place and Robert Street, and the houses on them are numbered 1900 and 1902 Eutaw Place. On the same day, in 1883, Dwight D. Mallory acquired the corner lot, No. 1900, and his mother, Elizabeth D. Mallory, acquired the inside lot, No. 1902. And four years later, in 1887, during the same ownership, a house was built on each lot, but the two were connected with each other in some respects. An opening between the celllars gave access from one to the other, a like connection was made through a stable on the corner property, drainage from No. 1902 was carried over No. 1900, there was a common chimney and a continuous roof for the two houses, and there was a speaking tube across between the two on the second floors. Otherwise the buildings were built as separate homes. They were built, however, as one building operation, upon plans of one and the same architect, who appears to have been employed by Mr. Mallory. The corner house, with its stable, was built along the whole length of its frontage on Robert Street, and its yard, varying from twenty-one to eighteen feet wide, was left open on the inside and rear of the lot. The house No. 1902 was built upon a plan, widely adopted for inside lots at the time, of leaving open a comparatively narrow yard along the side of the building back of the front rooms, and opening upon this one rear window from each of the front rooms and windows in the side of all the rear rooms. The width of the side yard in this instance varied: at the rear wall of the front room it was five feet two inches, narrowed to two feet two inches by a bay window projected from the rooms next in the rear, then widened by

a recess in the wall to ten feet, then continued to the rear of the whole building with a width of over six feet. A solid fence seven feet high separated that yard from the yard of the corner lot, and, of course, the house on the inside lot had an outlook over the fence across the yard of the corner lot, and enjoyed an abundant light from the south by this arrangement of the two buildings. A passageway under the building No. 1902 was opened for the width of the side yard from the yard out to the front on Eutaw Place. The condition thus described has remained until the present time, except that, before the time of a sale of the inside lot to a predecessor of the complainant in title, Mr. Mallory, the owner of both lots, permanently blocked up the communicating door between the two cellars.

The two houses were owned separately by Mr. Mallory and his mother until the time of her death in 1892. Mr. Mallory then inherited a one-half interest in his mother's property, and five years later, in 1897, he bought the remaining half from his brother, and then became owner of both lots in their entirety. In 1919 he sold the lot No. 1902 to William Sauer and others, predecessors of the complainant in title; and in 1922 he himself died, and by his will the corner lot was devised to a niece, who later sold it to the defendant. The addition which the defendant plans to build over the yard is to be used as part of an undertaking establishment.

Implication of a grant of an easement in favor of one portion of a property, when ownership of the whole is severed by conveyance, arises from the intention and expectation of the grantor and grantee of that portion, to be presumed from its apparent dependence on the other; or, stating the principle in another way, after the severance the grantor is estopped to deny to the severed portion the uses and advantages of the remaining portion which have been connected with it in such a way as naturally to lead the grantee to assume that they pass with it. Easements of all kinds may thus be implied in Maryland, although implied easements of light and air have been considered by the courts of many states to be inconsistent with the frequent changes in owner-

ship and development of real property in this country. *Mc-Tavish v. Carroll,* 7 Md. 352; *Cherry v. Stein,* 11 Md. 1; *Janes v. Jenkins,* 34 Md. 1; *Oliver v. Hook,* 47 Md. 301; *Burns v. Gallagher,* 62 Md. 462; *Eliason v. Grove,* 85 Md. 227; *Duvall v. Ridout,* 124 Md. 193. See review of American decisions generally in 26 *L. R. A. N. S.* 315. The implication being one of apparent expectation and intention, many facts may bear on it, tending to support it or rebut it. It must always be shown that there is a necessary dependence of the severed portion for its reasonable, beneficial enjoyment; mere convenience will not suffice. The grantor impliedly grants, said Chief Judge Alvey in *Burns v. Gallagher, supra,* page 473, "that also which is necessary to make the grant or conveyance of the principal subject effectual and beneficial; and in this case we must suppose that it was the intention, as doubtless it was the expectation, of the parties, that the premises sold and transferred to Gallagher should be used and enjoyed with the same easements and privileges with which they had previously been used and were then enjoyed."

Here the houses were built as separate houses, and were separately owned for many years, always in their present condition except for the interior communications, which seem unimportant here, and some of which, at least, were closed up before the severance of the joint ownership. The yards were entirely fenced off from each other. The arrangement of the inner house and its yard is not one met with only where there is an open area on the next lot to be looked over; it is an arrangement commonly found in Baltimore in houses adjoining corner houses which take their light on the other side from the adjacent streets or alleys and are built up to the line on the inner side. The diagram reproduced in the report of *Burns v. Gallagher, supra,* shows an instance of this. The arrangement is not therefore one which can be said to show in itself a necessary dependence upon the corner property for light; experience and common practice show that, while the additional light across the adjoining lot is a convenience, it is not a necessity. And for the same reasons a buyer of the inner property would not, we think, be justified in assum-

ing that the open yard on the corner lot was intended by the owner of both as a necessary incident to the arrangement of the house and yard on the inner lot. Certainty and security in title to land require that the arrangement of the buildings, especially of that for which the easement is claimed, should give clear notice to a purchaser of the other lot that a permanent easement over it has been given or assumed; and we do not think that fact would be clear from the arrangement here. We, therefore, concur with the lower court in its conclusion.

*Decree affirmed, with costs to the appellee.*