60 S.E.2d 710 (1950)
NOMAR et al.
v.
BALLARD et al.
No. CC765.
Supreme Court of Appeals of West Virginia.
Submitted April 19, 1950.
Decided May 31, 1950.
Dissenting Opinion July 21, 1950.
*711 Lon H. Barringer, Charleston, for plaintiffs.
Simms & Simms, Philip R. Simms, Charleston, for defendants.
FOX, Judge.
Prior to the year 1928, one Lizzie Coles became the owner of Lots Nos. 27 and 28 in Block C-6 in the Town of South Charleston, West Virginia, said lots lying contiguous, each fronting twenty-five feet on Seventh Avenue in said town, and extending back one hundred and thirty feet to an alley. Lot No. 27 was first acquired by the said Lizzie Coles, but a three story building was constructed on Lot No. 28, prior to the year 1928, and prior to any improvements on Lot No. 27. This building extended from West to East, the first or ground floor of which was contemplated to be used for business purposes, and the second and third floors were arranged to be used as living apartments. Apparently, the said building had windows on the north and south sides thereof. The windows on the south side furnished light for a hallway by which entrance was had to the apartments on the second floor, and the apartments themselves were lighted by windows in the north wall of said building. The three story brick building so constructed on Lot No. 28 extended over on Lot No. 27, a distance of three inches, and the north wall thereof covered such three inches of Lot No. 27, and a part of Lot No. 28, which subsequently constituted the party wall hereinafter mentioned, and apparently recognized by all parties to this litigation. The record is in some confusion as to the width of this wall. Plaintiffs allege that the wall was six inches in width, and the briefs of the defendants contend that it was twelve inches in width; but, certainly, it is clear that the wall extended three inches on Lot No. 27, because in the various conveyances of said lot, the width conveyed is twenty-four feet and nine inches.
In 1928, Lizzie Coles erected a two story building on Lot No. 27, using the north wall of the three story building as the south wall of the new building thereby creating a party wall. The roof of said two story building, if extended to the party wall, was above the windows located in the north wall of the three story building, and would have covered the windows in the north side of said building. To avoid this result, the said Lizzie Coles, in constructing the building on Lot No. 27, cut what is called a well into the second floor of said building. This well is about four feet in width and extended below the line of the windows in the north wall of *712 the three story building. The parties do not agree on the length of this well, but it was from forty to sixty feet. It furnished light and air to the second floor apartments in the building located on Lot No. 28.
Lizzie Coles died intestate in the year 1934, leaving a husband and children surviving her. On January 25, 1935, William Coles, widower, and the children and heirs at law of Lizzie Coles, conveyed to John W. Parris and Frank G. Parris all of Lot No. 27 of Block C-6, aforesaid, on which the two story building was erected in 1928, except a strip of three inches running the length of the lot on its south side. The portion of said lot so conveyed is described as beginning at a stake on Seventh Avenue on the division line between Lots Nos. 26 and 27 of Block C-6, thence with the line of Seventh Avenue and the front line of said Lot No. 27, a distance of twenty-four feet nine inches, to the center of the wall dividing the building of the property conveyed and the adjoining lot, designated party wall, and thence with the center of said party wall in a straight line one hundred and thirty feet to an alley, and thence with the rear line of said Lot No. 27, a distance of twenty-four feet and nine inches to the division line between Lots Nos. 26 and 27, and thence with said division line one hundred and thirty feet to the beginning and including one-half of said party wall, and described as being all of Lot No. 27, except the strip thereof of three inches in width, the entire length thereof and adjoining Lot No. 28 of said block. On December 22, 1943, Frank G. Parris conveyed his interest in said lot to John W. Parris; on March 13, 1946, John W. Parris conveyed said lot to McClung and Pettus Realty Corporation, a corporation; and on April 1, 1947, said McClung and Pettus Realty Corporation conveyed said lot to the defendant, Charles W. Ballard, Jr., who appears to be the present owner thereof, subject to a lease executed by him to the defendant, Ballard, Inc., a corporation. The several conveyances of Lot No. 27, with the exception aforesaid, followed the same description of the lot as that contained in the deed of January 25, 1935, aforesaid; and in none of said deeds is any reference made to the opening or well in the second story of the building located on said lot, which is the subject of this controversy. The conveyance is a direct and unrestricted conveyance of twenty-four feet and nine inches of Lot No. 27, as the same fronts on Seventh Avenue, and extends back one hundred and thirty feet to an alley, and makes the southerly line of which pass through the party wall between the building erected on Lot No. 28 and Lot No. 27.
By recitals from deeds exhibited with the record, it appears that there may have been one or more conveyances of interests in Lot No. 28 between the heirs of Lizzie Coles; but on March 28, 1941, Clarence H. Coles, and others, conveyed to Sam Wallace and Nellie Harlan Wallace, his wife, Lot No. 28 in Block C-6, and three inches of Lot No. 27, aforesaid. The description of the property so conveyed by said deed calls for beginning at Seventh Avenue where the dividing line between Lots Nos. 28 and 29 of Block C-6 intersects the line of said Avenue, and thence with the line of Seventh Avenue and the front line of Lots Nos. 28 and 27 of said Block, a distance of twenty-five feet and three inches, to the center of the party wall on the adjoining lot, and thence with the center of said party wall, a straight line one hundred and thirty feet to an alley, and thence with the line of said alley and the rear line of said Lots Nos. 27 and 28, a distance of twenty-five feet and three inches, to the division line between Lots Nos. 28 and 29, and with said line to the beginning, and described as being all of Lot No. 28, and a strip of three inches extending the entire length of said Lot No. 27 and adjoining the said Lot No. 28. On November 15, 1945, Sam Wallace and Nellie Harlan Wallace, his wife, conveyed said Lot No. 28, and part of Lot No. 27, to the plaintiffs in this suit, Lillian Nomar and Mary Frances Aubrey, the description of the property conveyed being identical with that contained in the deed from Clarence H. Coles and others, to the grantors. In neither of these deeds is any mention made *713 of any claimed easement of light or air from the opening or well then located in the building constructed as aforesaid on Lot No. 27; and so it is that in none of the conveyances of either Lot No. 27 or Lot No. 28, or of any part of either, is any reference made to an easement for light and air, now asserted on the one hand, and denied on the other, and which is the subject matter of this litigation.
Shortly after the defendant, Charles W. Ballard, Jr., obtained title to the portion of Lot No. 27 conveyed to him, he notified plaintiffs of his intention to close the windows in the party wall between his building on Lot No. 27, and the building of the plaintiffs located on Lot No. 28. He subsequently did close said windows, and extended the roof of his building on Lot No. 27 to the party wall between his building and that of the plaintiffs, the result of which was to deprive plaintiffs of the light and air which they had theretofore enjoyed, in respect to the second floor apartments of their building, from the well or opening in the building located on Lot No. 27.
Plaintiffs instituted this suit in the Circuit Court of Kanawha County, West Virginia to obtain a mandatory injunction compelling the defendants to reopen said windows so closed by them, and, in effect, to restore the light and air which plaintiffs had enjoyed, through the use of the opening aforesaid, until the date the same was destroyed by the extension of the roof of defendants' building to the party wall aforesaid.
The case comes to us on an order entered by the Circuit Court of Kanawha County, on December 20, 1949, by which that court overruled a demurrer to plaintiffs' amended bill of complaint, and certified its rulings on said demurrer. The plaintiffs filed their original bill, setting up the facts we have attempted to state in this opinion. No factual questions are presented, first, because there is no ambiguity in the conveyances of the respective properties; and, second, for the purposes of this demurrer, the allegations of plaintiffs' amended bill are treated as true. In this connection it seems proper to quote two paragraphs of said bill, in which, referring to the opening or well in the building on Lot No. 27, it is alleged that: "* * * the aforesaid easement for light and air was recognized as necessary and was acquiesced in and was not interfered with in any way by the sundry holders, possessors and owners of the Ballard building down to the month of April, 1947; that the Ballard building and the land which it occupies was acquired by Charles W. Ballard, Jr. under the deed aforesaid, and at the time of said conveyance on the first day of April, 1947, the said easement of light and air for the benefit of the second floor apartment in complainants' building and the owners thereof and the occupants living therein, was obvious, apparent, continuous and necessary and was desirable to the most casual inspection by any purchaser of said Ballard building and the land on which it stands." A further allegation in said bill is that: "Complainants further say that it is not possible for them to move or change the position of the hallway and apartments situated on the second floor of their building so that said apartments would be situated along the south side wall of the complainants' building where light and air might be obtained for such apartment without ejecting all persons presently living in said apartment for a long and indefinite period of time and undertaking remodeling and refinishing work of a prohibitive expense of not less than Five Thousand ($5,000.00) Dollars." As we understand, there is no substantial difference between plaintiffs' original and amended bills, except that the amended bill contains, by exhibits and otherwise, some additional description of the properties involved. The demurrer interposed to the original bill is made to apply to the bill as amended.
The contention of the plaintiffs, as set up in their bill, and in briefs, is that when the heirs at law of Lizzie Coles conveyed to John W. Parris and Frank G. Parris a portion of Lot No. 27, by deed dated January 25, 1935, they reserved, by implication, an easement saving to them the benefit of light and air as the same *714 was afforded the second floor apartments of the building retained by them by the opening or well in the building located on said Lot No. 27 so conveyed; that, necessarily, such easement was in the nature of a covenant or right running with the land which passed with the land when Lot No. 28, and a part of Lot No. 27, were conveyed to the plaintiffs' predecessors in title; and that plaintiffs, under the conveyance to them of said Lot No. 28, and a part of Lot No. 27, are entitled to have restored to them the light and air for their building aforesaid as the same existed when said lots were conveyed to their predecessor in title. The contention of the defendants, asserted by their demurrer, and argued in their briefs, is that under the settled law of this State there can be no implied reservation such as that contended for by plaintiffs; and that the defendants were completely within their rights in closing up the opening or well, and in closing the windows in the party wall between the buildings located on Lots Nos. 27 and 28 aforesaid. It is admitted by all parties that the common law doctrine of ancient lights no longer prevails in West Virginia. Code, 2-1-2. It is conceded by plaintiffs that an easement of light and air cannot, under the laws of this State, be acquired by prescription. The sole contention of plaintiffs is that some character of servitude in respect to light and air was imposed on Lot No. 27, by implications arising from the very nature of the situation as it existed at the time Lot No. 27 was conveyed by the deed of January 25, 1935, to defendants' predecessors in title.
The questions presented to the Court in the case at bar grow out of the abolition in this State of the common law doctrine of ancient lights, as that doctrine was established in England before the American Revolution, and as recognized by some of the States subsequent to that event. The clearest statement of that doctrine will be found in 3 Kent's Commentaries 698. The right to invoke such doctrine was based upon what we would in this day term a prescriptive right, following long usage. But, of course, the right could be controlled by contract. Under the doctrine, ancient lights were "entitled to protection as such, in the precise mode, and to the extent enjoyed during the period which gave them the claim to be ancient lights, and no further." But a person could not sustain a claim to an ancient light, "in derogation of his own grant of the adjoining ground, without reservation." The doctrine, being a part of the common law, was effective in Virginia, and, appears to have continued in force in this State until the adoption of our Code of 1868, which became effective on the 1st day of April, 1869. By Section 13 of Chapter 79 of said Code, it is enacted that: "It is hereby declared that the common law of England, touching ancient lights, is not and never has been in force in this state." Our present act on the subject, Code, 2-1-2, is that: "The common law of England in regard to ancient lights is not in force in this State."
The first case decided by this Court on the subject of ancient lights was that of Cunningham v. Dorsey, 3 W.Va. 293, in which it is held: "Adverse enjoyment of lights for a time which must have exceeded thirty years, does not give sufficient right to the party enjoying them to enable him to obtain an action for obstructing them." This decision was rendered at the January Term, 1869, and makes no reference to the statutory declaration contained in the Code of 1868, possibly for the reason that said Code may not have been in effect on that date, and the rights of the parties, if any, had accrued long prior to the date of any statute on the subject. In the opinion in that case, it is stated that no cases bearing on the subject had been decided by the Supreme Court of Appeals of Virginia. The next case was that of Powell v. Sims, 5 W.Va. 1, 13 Am.Rep. 629, which also makes no mention of the statutory provision contained in the Code of 1868, although the case was submitted at the July Term, 1871. We will defer consideration of that case until later in this opinion. In Koblegard v. Hale, 60 W.Va. 37, 53 S.E. 793, 116 Am. St.Rep. 868, 9 Ann.Cas. 732, it was held that: "The owner of land cannot maintain *715 a bill for an injunction against the owner of adjoining land, to restrain him from maintaining a fence of unusual height on his land, on the sole ground that such fence deprives a building on the land of the former of light and air coming laterally from such adjoining land", and it was stated that at common law one had the right to build a fence on his own land as high as he pleased, notwithstanding it might obstruct his neighbors' light and air, and his motive in so doing could not be questioned, which seems to be somewhat in conflict with the generally accepted force of the common law doctrine of ancient lights. In Hennen v. Deveny, 71 W.Va. 629, 77 S.E. 142, L.R.A.1917A, 524, it was held that a contractual provision contained in a deed "that no building shall be erected on any part of the land surrounding the above described granted church lot within ten feet of said church lot" was a covenant which created a perpetual easement in said ten foot strip of land in favor of the church lot for the purpose of light and air, and that the same was not extinguished by the conversion of the church building into a business house, and that so long as the easement was useful to the dominant estate, the owner thereof might enjoin its infringement as a private nuisance. This, of course, merely construed the effect of certain language contained in a contract, and had no particular bearing on the question of ancient lights, or the common law right to light and air.
The abolition of the common law doctrine of ancient lights by the Legislature of this State, to say nothing of the general tendency of the courts of the country, prior to the formation of this State, to abolish the doctrine as not being suited to the development of a new country, has given rise to the vexatious question of whether an easement for light and air may be impliedly granted or reserved, in connection with the conveyances of real estate, by which parties claiming under such conveyances may assert a right to light and air to which they would not otherwise be entitled. It seems to be conceded that the right to light and air may not be obtained by prescription. In truth, the common law doctrine of ancient lights was based upon prescription, and when that doctrine was abolished, any right to obtain light or air by the prescriptive method ended. It seems also to be conceded that where there is no transaction between owners of land which creates an obligation from one to the other, and where the adjoining lots and land are owned by different people, between whom no obligations exist, either party may build on his own lot regardless of the effect thereof as to light and air which the adjoining owner may have enjoyed prior to such construction. Nor do we think the doctrine of implied grant or reservation can apply to a vacant lot where there is a building on an adjoining lot, both of which lots are owned by the same person, and where the owner of the building conveys the vacant lot. In such a case it seems clear that the owner of the vacant lot may use the same for his own purposes in a construction of a building, or otherwise, even though the light and air of the grantor's building may be affected or even destroyed. It is only where one person owns improved property, and conveys a part thereof to another, and where there is an existing situation, known and obvious to all parties to the transaction, that the doctrine of implied grant or reservation can be enforced in any case.
The authorities on the question in this country are divergent. In 1 Am.Jur. 534, it is stated: "* * * On the one side, the rule is laid down that the law of implied grants and implied reservations, based on necessity or use alone, should not be applied to easements for light and air over premises of another in any case, because an implication of the grant of such a right without express words would greatly embarrass the improvement of estates and, by reason of the very indefinite character of the right asserted, promote litigation. Therefore, it is said, the simplest rule, and that best suited to a country like the United States, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed." *716 In the note attached to this statement, the following cases are cited: Morrison v. Marquardt, 24 Iowa, 35, 92 Am.Dec. 444; Mullen v. Stricker, 19 Ohio St. 135, 2 Am. Rep. 379; Karasek v. Peier, 22 Wash. 419, 61 P. 33, 50 L.R.A. 345; Keats v. Hugo, 115 Mass. 204, 15 Am.Rep. 80; Baird v. Hanna, 328 Ill. 436, 159 N.E. 793, 56 A. L.R. 1133; Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170; and the holding of the last two cases is stated to represent the prevailing view of the American courts.
However, it is stated in the same section quoted from above that:
"The doctrine of implied grant of light and air has been recognized in some jurisdictions wherein the rule is that an implied grant of an easement of light will be sustained only in cases of real and obvious necessity, and will be denied or rejected in cases where it appears that the owner of the dominant estate can, at a reasonable cost and expenditure, have or substitute other lights to his building, so that he may continue to have the reasonable enjoyment of the same and the owner of the servient estate may be left to the enjoyment of his own property free from the restriction and burden that would otherwise be imposed upon it.
"But the doctrine has sometimes been broadly applied, and it has been declared that when an owner has created and annexed peculiar qualities and incidents to different parts of his estate, so that one portion of his land becomes visibly dependent upon another for the supply of light and air, and he grants the parts to which such incidents are annexed, those incidents thus plainly attached to the part granted and to which another part is made servient will pass to the grantee as accessorial to the beneficial use and enjoyment of the land."
In support of the quotation last above, there is cited Turner v. Thompson, 58 Ga. 268, 24 Am.Rep. 497; Knight v. Mitchell, 154 Md. 102, 140 A. 74, 56 A.L.R. 1135; Rennyson's Appeal, 94 Pa. 147, 39 Am.Rep. 777; and Powell v. Sims, 5 W.Va. 1, 13 Am.Rep. 629.
The cases cited in support of the first quotation above appear to uphold the doctrine that there is no place in our law for implied grants or implied reservations based upon necessity or use alone as applied to easements for light and air over other premises. The cases cited in support of the doctrine of implied grant or reservation of light and air, plainly recognize that such an easement may be obtained through an implied grant or reservation only in certain narrowly limited cases. The case of Rennyson's Appeal, supra, decided in 1880, holds that: "No grant of light and air will be implied beyond what is absolutely necessary to the enjoyment of the premises conveyed", and cites our case of Powell v. Sims, supra. In Knight v. Mitchell, supra, decided in 1928, the holding is that: "An implied grant of an easement of light in favor of one portion of property, when ownership of the whole is severed by conveyance, will not be implied as the presumed intention of the grantor and grantee, unless clearly evidenced by the arrangement of the buildings on the premises conveyed, which must be dependent upon the other lot for light, not as a mere matter of convenience, but as a necessity." In the case of Turner v. Thompson, supra, it was held: "Land was sold, with a house on it having windows overlooking the adjacent land of the grantor. Held, that the grantor was estopped from obstructing the windows if they were necessary to give light and air to the house; otherwise, if sufficient light and air could be derived from other windows opened, or which might conveniently be opened elsewhere in the house."
In the case of Lampman v. Milks, 21 N. Y. 505, decided in 1860, it was held: "Where the owner of land has, by any artificial arrangement, effected an advantage for one portion, to the burdening of the other, upon a severance of the ownership the holders of the two portions take them respectively charged with the servitude and entitled to the benefit openly and visably attached at the time of the conveyance of the portion first granted." This was a case involving a stream, the flow of which had *717 been diverted; but the principle would seem to apply to all cases of implied grants or reservations. In the body of the opinion, prepared by Judge Selden, the following statement is made: "The rule of the common law on this subject is well settled. The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts. But the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases; and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."
Later, in the case of Outerbridge v. Phelps, decided in 1883, a New York case, reported in 13 Abbot's New Cases 117, involving the right to use a hallway in a building, the following statement appears in the body of the opinion: "* * * I am satisfied that the true rule of law is as follows: Where the owner of two or more tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or the portion sold, with all the benefits which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. But no burden or servitude can be imposed by the vendor upon the tenement, or portion sold, in favor of the property retained by him in derogation of his grant, without a reservation expressed in the grant, unless an apparent sign of servitude exists on the part of the tenement, or portion sold, in favor of the property retained, and the easement claimed is strictly necessary to the enjoyment of the property retained. In the latter case, visibility and strict necessity must both concur, as in case of a party wall, and especially in the case of a claim of right of way." See also: Lowenback v. Switzer, 1 Va. Dec. 141; Sanderlin v. Baxter, 76 Va. 299, 44 Am.Rep. 165; St. Clair v. Edgewood Water Works Co., 151 Va. 274, 144 S.E. 452; Greer v. Van Meter, 54 N.J.Eq. 270, 33 A. 794; Blumberg v. Weiss, 126 N.J. Eq. 616, 10 A.2d 743.
While the cases cited above are informative and helpful, as representing the conflicting views of the courts, we are mainly concerned with the holding of our own Court in the case of Powell v. Sims, supra. This case seems to have been relied on in at least two of the cases discussed above. In that case, it seems to have been recognized that a tendency existed throughout the country to reject altogether the theory of implied grants of easements for light and air, and to limit and confine such rights to express grants, so that the rights of the parties could be determined from the provisions of the deed under which they held title to their property. But, following this recognition, and in the body of the opinion, it is stated: "The prevailing doctrine here would seem to be, that an implied grant of an easement of light will be sustained only in cases of real and obvious necessity, and will be denied or rejected in cases when it appears that the owner of the dominant estate can, at a reasonable cost and expenditure, have or substitute other lights to his building, so that he may continue and have the reasonable enjoyment of the same; leaving the owner of the servient estate also to the enjoyment of his own property free from the restriction and burden that would otherwise be imposed upon it. In the application *718 of this principle, doubtless, some embarrassment will sometimes be realized in determining the degree of necessity that ought to be required to support the right to the easement, and each case must necessarily be settled on the facts and circumstances surrounding it." In the third point of the syllabus in this case, it was held: "An implied grant of an easement of light will be sustained only in cases of real necessity; and will be denied or rejected in cases when it appears that the owner claiming the easement can, at a reasonable cost, have or substitute other lights to his building." In that case it was found that the plaintiff could, at a reasonable cost, substitute other windows in his property for those alleged to have been closed by the proposed new construction on the adjoining lot which the defendant had conveyed to the plaintiff in that case, but it cannot be interpreted otherwise than as holding that in cases of necessity an implied grant will be decreed.
The case of Powell v. Sims has not been overruled or departed from since it was decided in the year 1871, and has, we think, become a rule of property entitled to be maintained and enforced for the protection of persons who have acquired property in the light of the ruling there made. Those rights, limited though they be, are as much entitled to protection as if they were broader and more general in their application. This Court has not favored the overruling of cases, particularly where citizens have come to rely thereon in their several transactions over long terms of years. Occasionally, of course, the arguments against a rule of property have become so strong as to seemingly justify a departure from this general principle, the best examples of which are the cases of Ralston v. Town of Weston, 46 W.Va. 544, 33 S.E. 326, 76 Am.St.Rep. 834; and Pardee v. Camden Lumber Co., 70 W.Va. 68, 73 S.E. 82, 43 L.R.A.,N.S., 262. In our opinion, the situation presented in the case at bar would not justify us in overruling Powell v. Sims, and, until we do so, we are of the opinion that plaintiffs' cause of action, as set up in their bill, comes within the general principles enunciated therein. The facts, when developed by proof, may present a situation under which we would not be warranted in applying the doctrine of that case. At this time, we must decide the question presented to us upon the allegations of plaintiffs' bill, reserving the right to appraise the merits of the case when the same is fully developed.
Counsel for the defendants says that the case of Powell v. Sims does not apply to this case, because that case involved an implied grant of light and air, and that there cannot be an implied reservation of light and air because such a reservation would be in derogation of a grant, which cannot be permitted. As indicated above, 3 Kent's Commentaries, 699, furnishes support for this contention. However, modern cases do not seem to make this distinction, and, in our opinion, an implied reservation stands upon the same footing as an implied grant, when applied to an easement of any character. Of course, there is no such thing as a right to light and air obtained by prescription; but aside from this, the general rule which appertains to implied grants and reservations seems to us to be the same. Any easement obtained through prescriptive use has its basis in an implied grant or implied reservation. Therefore, we think the cases bearing upon easements for rights of way and the like, are here pertinent. In Hoffman v. Shoemaker, 69 W.Va. 233, 71 S.E. 198, 34 L.R.A.,N.S., 632, we held: "A grantor may claim a way over the granted premises, as reserved by implication, if it is shown to be strictly necessary to the use and enjoyment of adjacent land retained by him, and the intent to reserve it is not negatived by any express terms of the deed." Bennett v. Booth, 70 W.Va. 264, 73 S.E. 909, 39 L.R.A.,N.S., 618, was a case where the owner of a tract of land had erected a mill dam for the purpose of operating a grist mill, and the pond thus created extended to a part of his land which he afterwards conveyed without any reference thereto. Later, the owner of said land so conveyed sought to prohibit the maintenance of said mill dam so far as it affected the pond on his land, and it was held: "If an owner of land erect a mill dam *719 upon it for the purpose of operating a grist mill, and thereafter convey a portion of the land, including a part of the millpond, there is an implied reservation of an easement upon the land granted, as appurtenant to the grist mill. A covenant of general warranty of title is not broken by the existence of such an easement." In Miller v. Skaggs, 79 W.Va. 645, 91 S.E. 536, Ann.Cas.1918D, 929, it is held: "To raise an implied reservation or grant of an easement the existing servitude must at the time of the deed be apparent, continuous and strictly necessary."
We have here a situation where, as admitted on demurrer, the defendant Ballard acquired title to a portion of Lot No. 27 with full knowledge of the existence of the well or opening in the second story of the building located thereon. Aside from this admission, he must have known of the existence of such well or opening, and of the windows in the party wall of the adjoining three story building located on Lot No. 28 which windows opened into said opening or well. This fact differentiates this case from the case where a person buys a vacant lot with knowledge that the construction of a building thereon may remove light and air from the adjoining building or buildings. In our opinion, consideration should be given to the factual situation as alleged in the bill. That bill alleges, in substance, that necessary changes in their building to secure light and air could not be obtained for a cost of less than $5,000. Whether such cost, considering the value of the property, and the uses to which it might be devoted in the future, is prohibitive, and whether it creates a situation where it may be said that the windows closed by the defendants should be reopened as a matter of necessity, we cannot, at this stage of the litigation, determine. In view of the state of the law as laid down in Powell v. Sims, we are of the opinion that a complete development of the facts in the case is necessary to a determination of the rights of the parties to this suit.
The rule laid down in Powell v. Sims, should not be applied except in a case where there is a clear showing of necessity therefor, and we are not foreclosing the view that even in such a situation it should not be allowed to impede progress by prohibiting improvements to property necessary to keep in line with the development of the community in which the same is located. We know that in the development of our towns and cities, the first step is the erection of buildings of one and two stories, which are later replaced by more substantial buildings of greater height. It would be dangerous to establish a rule by which progress of a community would be hampered by implied restrictions, or for the mere convenience of people who may elect to keep their property in its original state. In the application of the doctrine of implied grants or reservations as to easements for light and air, there should be brought into the picture the element of fairness between the individuals involved, and consideration for the probable development of the community. All these considerations suggest to us that we should not, on this demurrer, commit ourselves to any definite view of the situation presented on this record. As the matter stands, we can only accept as true the allegations of plaintiffs' bill. Accepting these allegations as true, it may be questioned whether they present a situation where, as a matter of law, we can say they are entitled to the relief prayed for; but, on the other hand, we feel that the allegations are sufficient to call for further development of the case, and justify us in refusing to sustain the demurrer, the effect of which, in the absence of an amendment, would be to call for the dismissal of plaintiffs' bill.
Considering the whole matter, we are of the opinion to sustain the ruling of the Circuit Court of Kanawha County.
Ruling sustained.
LOVINS, P., and GIVEN, J., dissent and reserve right to file a dissenting opinion.
GIVEN, Judge (dissenting).
The deed from Downey to Sims, considered in Powell v. Sims, 5 W.Va. 1, 13 Am.Rep. 629, relied upon by the majority, was dated March 29, 1869. The provision of the 1868 Code, now Code, 2-1-2, providing that "It is hereby declared that the common law of England, touching ancient *720 lights, is not and never has been in force in this State", did not become effective until April 1, 1869. The Powell case was not decided until the July term, 1871, and does not mention the statute, but clearly bases its authority upon the common law rule relating to implied grants of easements for light, and very materially limits that rule by declaring: "The common law of England is in force in this State only so far as it is in harmony with its institutions, and its principles applicable to the state of the country and the condition of society." Since the statute above quoted declared the common law rule relating to ancient lights not to be the law of this State, and since the effective date of the statute was subsequent to the date of the deed, I am of the view that the Powell case can not be considered authority for the position of the majority in the instant case. The common law rule permitted an easement for air and light only upon the presumption of an implied grant. When the rule was abrogated by the statute the right to imply such a grant was necessarily destroyed.
Assuming, however, that the rule of the Powell case remains the law of this State, I can not believe it was intended to be given the broad meaning attributed to it by the majority in the instant case. The rule is laid down in the first clause of Point 3 of the syllabus as follows: "An implied grant of an easement of light will be sustained only in cases of real necessity; * * *." The opinion says only in cases of "real and obvious necessity." The last clause of Point 3 merely applies the rule to the facts of that case. It merely says that the rule could not be applied in that case for the reason that light could be obtained from a different source at a "reasonable cost", and does not necessarily mean that the grant of an easement would be implied in a case where "real and obvious" necessity did not exist, even though light could not be obtained at a reasonable cost. The word "real" is often used as synonymous with such words as absolute, intrinsic and actual. Webster's International Dictionary, 2d Edition. I think that the rule intended to be laid down in the Powell case was that the necessity for the easement must be absolute and also obvious. Such a meaning would not permit uncertainties as to the existence of such easements and would not make titles to real properties depend upon proof as to such matters as costs of altering buildings, upon the utility of the building before or after alterations, or as to opinions of persons, living or dead. Such meaning would, I believe, bring the rule practically into accord with our "existing system of registration" of titles, as pointed out in the Powell case, and practically in accord with "the manifest tendency to reject altogether the doctrine of implied grants of easements for light, and limit and confine to express grants, so that the rights of the parties would be determined by the face of the deed under which they hold", as also pointed out in the Powell case. In Rennyson's Appeal, 94 Pa. 147, 39 Am.Rep. 777, cited in the majority opinion, the Powell case is relied upon as holding that such an easement could not be implied beyond what "is absolutely necessary" to the enjoyment of the premises conveyed. Since it is admitted in this case that light and air can be obtained otherwise than by virtue of the claimed easement, and there is no absolute and obvious necessity for the easement, I would reverse the ruling of the lower court.
If forced to the conclusion of the majority, I would not hesitate to overrule the Powell case. Less harm would result, I believe, by doing so than to permit to stand such a plainly erroneous decision, one almost universally condemned. "The common law of England, touching ancient lights, though recognized in the United States in some early cases, and apparently adopted in some of the States, has generally been almost unanimously repudiated. * * *" 1 Am.Jur., Adjoining Land Owners, Section 49. "It is generally held, in this country, that there is no implied grant of right to light or air over the grantor's land adjoining the land conveyed." 2 Thompson on Real Property, Permanent Edition, Page 205. In Baird v. Hanna, 328 Ill. 436, 159 N.E. 793, 794, 56 A.L.R. 1133, the Court pointed out that the *721 law of implied grants and implied reservations should "not be applied to easements for light and air", citing Guest v. Reynolds, 68 Ill. 478, 18 Am.Rep. 570; Keating v. Springer, 146 Ill. 481, 34 N.E. 805, 22 L. R.A. 544, 37 Am.St.Rep. 175, and others. Undoubtedly the great weight of authority supports such a rule. 3 Kent's Commentaries, 14th Ed., 698; 1 Am.Jur., Adjoining Land Owners, Section 50; Miller v. Hoeschiler, 126 Wis. 263, 105 N.W. 790, 8 L.R.A.,N.S., 237; Knight v. Mitchell, 154 Md. 102, 140 A. 74, 56 A.L.R. 1135. To permit such a rule as contended for by the majority to stand necessarily brings into question numerous titles upon which adjoining buildings have been erected. The purchasers thereof must take the risk of the existence or nonexistence of such easements and there is no possible way for them to determine what evidence may be produced in the future as to the necessity for or as to the existence of such an easement, or what evidence can be produced at some given time as to "reasonable costs" of alterations claimed necessary, or even what alterations would be deemed necessary. Under such a rule reasonable costs today may be the controlling feature in determining the nonexistence of an easement, while tomorrow the costs may prove unreasonable, creating the easement. It seems clear that under such circumstances purchasers will have no way of determining whether their properties are to be encumbered with such easements or to remain free therefrom. There is no way to make titles certain and, at the same time, make them depend upon proof of "facts and circumstances of the particular situation presented." In Keats v. Hugo, 115 Mass. 204, 15 Am.Rep. 80, where many authorities are reviewed, the Court stated: "By nature, air and light do not flow in definite channels, but are universally diffused. The supposed necessity for their passage in a particular line or direction to any lot of land is created, not by the relative situation of that lot to the surrounding lands, but by the manner in which that lot has been built upon. The actual enjoyment of the air and light by the owner of the house is upon his own land only. He makes no tangible or visible use of the adjoining lands, nor indeed any use of them which can be made the subject of an action by their owner, or which in any way interferes with the latter's enjoyment of the light and air upon his own lands, or with any use of those lands in their existing condition. In short, the owner of the adjoining lands has submitted to nothing which actually encroached upon his rights, and cannot therefore be presumed to have assented to any such encroachment. The use and enjoyment of the adjoining lands are certainly no more subordinate to those of the house where both are owned by one man, than where the owners are different. The reasons upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed." Obviously, cases considering implied grants of easements for rights of way should be given little, if any, weight, in determining the proper rule to be applied to implied grants of easements for light and air. In such cases the true facts can always be readily determined by an examination of the record title and a view or survey of the premises. Moreover, there is no statute in this State prohibiting the creation of such an easement by an implied grant.
I am not impressed with the belief that the rule of the Powell case, as contended for by the majority, has become a valuable "rule of property". On the contrary, the fact that no matter which involves the *722 rule has been brought before this Court since the decision of the Powell case, almost eighty years ago, notwithstanding the great number of congested building areas existing in this State, causes me to believe that no reliance whatever has been placed on the decision. However that may be, there seems no good reason for the continuance of a rule fraught with so many dangers and uncertainties. A case decided erroneously should be the law of that case only. See Falconer v. Simmons, 51 W.Va. 172, 41 S.E. 193; Town of Weston v. Ralston, 48 W.Va. 170 at page 188, 36 S.E. 446; Harbert v. Monongahela River Railroad Company, 50 W.Va. 253, 40 S.E. 377. I would not blindly follow a rule making titles to real properties now owned, as well as those to be acquired in the future, so uncertain and questionable, and deprive owners of valuable rights and uses of their properties, merely out of deference to an erroneously stated rule.
Being of the views indicated, I respectfully dissent. I am authorized to say that Judge LOVINS joins in this dissent.
LOVINS, President.
As above indicated, I join in the dissenting opinion of Judge GIVEN. I would go farther. The provisions of Code, 36-1-1, reading as follows: "No estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term therein of any duration under which the whole or any part of the corpus of the estate may be taken, destroyed, or consumed, except for domestic use, shall be created or conveyed unless by deed or will", militate against the creation of estates by implication. Especially is this true as to a claimed easement for light and air, which elements are intangible and cannot be the subject of exclusive possession.
Considering the operation of the conveyance from Lizzie Coles to her grantors, I do not think the creation of an easement in derogation of the original grant by Lizzie Coles should be permitted. "A deed which purports to convey a greater right or interest in real property than the person making it may lawfully convey shall operate as an alienation of such right or interest in such real property as such person might lawfully convey. * * *" Code, 36-1-10.
I think that Code, 36-1-10, does not support the construction of a deed so as to derogate from the grant contained in the deed from Lizzie Coles in which there is no reservation.
I am aware of the fact that this Court has upheld implied grants of easements in land and flowage rights, but I do not think that an implied easement in land or flowage rights is analogous to a claimed easement in light and air for the reason that one concerns tangible and the other intangible elements. Moreover, an implied grant rests on a different basis from an implied reservation contrary to an explicit grant.